[No. 10041. Department One. March 20, 1912.]

L. S. Franck, *Receiver etc., Respondent,* v. Pittock & Leadbetter Lumber Company, *Appellant.*[1]

Logs and Logging—Improvement of Streams—Boom Companies—Tolls. Under Rem. & Bal. Code, § 7123, providing that a boom company which had improved a navigable stream upon which it was not previously practicable to float logs, thereby aiding in the floating of logs, shall be entitled to driving charges on all logs placed in the stream without request to drive the same, it is entitled to driving charges without any actual work in handling the logs; the tolls being simply compensation for benefits conferred by improving the stream, and the right to impose the same being a right of government.

Appeal from a judgment of the superior court for Clarke county, McMaster, J., entered February 21, 1911, upon findings in favor of the plaintiff, in an action to foreclose liens upon logs. Affirmed.

*Miller, Crass & Wilkinson,* for appellant.

*Platt & Platt* and *Hugh Montgomery,* for respondent.

Gose, J.—This is a consolidated action, prosecuted to foreclose seven liens claimed upon certain logs for sluicing, sacking, driving, sorting, holding, and delivering them. The plaintiff is the receiver of the Washougal River Improvement & Log Driving Company, a corporation organized under Laws 1905, page 128, for the purpose of clearing out and improving the Washougal river, and for sluicing, sacking, driving, sorting, holding, and delivering logs and other

[1]Reported in 122 Pac. 7.

timber products.   There was a decree for the plaintiff upon all the liens.   The defendant has appealed.

The appellant concedes that the logs upon which three of the liens are asserted were actually "sacked," but insists that the evidence does not show that "any work was performed," either in "sacking or driving" the logs upon which the other four liens were allowed.   A witness defined "sacking" as the actual handling of a log by putting it into the river from a sand bar or other obstruction or place of lodgment, and defines "splashing" as the driving of logs by opening the dam.   The right to the liens is based upon the statute, Rem. & Bal. Code, § 7123.   The applicable part of the statute is as follows:

"Provided, that when a navigable stream upon which it was not previously practicable to float logs or other timber products is improved by clearing out rocks, straightening the channel, or the construction of wing dams and sheers by the corporation having a charter thereon, and thereby aiding and assisting the floating of logs and other timber products, a corporation shall be entitled to driving charges on all logs or other timber products placed in said stream without request to drive the same, . . ."

The court found:      '

"That before said corporation entered upon said river and cleared the same, as aforesaid, said river could not be prudently relied upon for the purpose of floating logs or other timber products, without the assistance of artificial means, or improvements, and that said corporation has improved said river by clearing out rocks, straightening the channel, and constructing wing dams and sheers, thereby aiding and assisting the floating of logs and other timber products, and that before said improvements were so made said stream was not navigable for the purpose of driving logs or other timber products, and before such improvements were so made on said river by such corporation logs would be caught in sloughs and piled up on bars, which are very prevalent in said river, and said improvements have made it possible to, and have, sheered logs out of sloughs and off of said bars."

While the statute may not be happily worded, it clearly means that, where a boom and driving company has made improvements upon a stream, in a measure navigable but not practicably navigable for the floatage of logs and other timber products, which aid and assist the floating of the logs, it shall be entitled to driving charges on all logs placed in the stream, "without request to drive the same." In other words, neither an actual "driving" nor an actual "sacking" is required to entitle the driving company to the toll.

The finding of the court is amply sustained by the evidence. The evidence shows that the stream in its natural state, even at its flood, could not be prudently relied upon for the floatage of logs, and that the improvements made by the boom and driving company facilitated the floating of all the logs upon which the right to liens is asserted. It further shows that all the logs were commingled with logs belonging to other parties than the appellant. The Washougal River etc. Company is a public service corporation. The purpose of the law is to permit such companies to improve the rivers and streams of the state, so as to make them practicably navigable for floating logs and other timber products, and to allow them to charge a toll for such service when the improvement has aided in the accomplishment of the end in view. It is not necessary that the company shall do any actual work in the handling of the logs. It suffices if the improvement it has made aids in floating them. Such streams are a public highway common to all, and the legislature foresaw that, without such improvements, there would be a commingling and congestion of logs so as to in fact destroy the common right. The state itself could have made the improvement, either by leving a general tax or by the exaction of tolls. It chose, however, to leave the field open to public service corporations. The right to impose tolls as a consideration for carrying out an enterprise intended to benefit the public is a right of government. *Bennett's Branch Imp. Co.'s Appeal*, 65 Pa. St. 242. As was said in *Sands v. Manistee River Imp.*

*Co.*, 123 U. S. 288: "The tolls exacted from the defendant are simply compensation for benefits conferred by which the floating of his logs down the stream was facilitated."

The decree is affirmed.

CHADWICK, PARKER, and CROW, JJ., concur.