## V. A. ANDERSON v. A. Y. LOCKE.

1. STOCK LAW. Power of legislature to pass. Common-law doctrine.
    The common-law doctrine which requires the owner of stock to keep them from trespassing upon the land of others has no application here; but the whole subject is in the power and control of the legislature, and it may, without violating any legal right, require an owner to so confine his stock as to keep them off the land of others.

2. SAME. Act of justice of the peace in respect thereto. Effect of kinship to interested person. Case in judgment.
    And if an act of the legislature against stock running at large authorize stock trespassing to be taken up and carried to the nearest justice of the peace, to be sold by him after due notice given, the fact that the justice, in any given case, is father-in-law of the party on whose land the cattle have been tres

passing, does not render him incompetent to perform such act, since it is not judicial in its character.

3. STOCK LAW. *Certain districts not to be fenced. Effect as to stock owned without the limits thereof. Act of February* 15, 1882, *construed.*

An act of the legislature, entitled " An Act to prevent stock running at large in certain supervisors' districts of Lowndes County, in this State," approved February 15, 1882, the manifest object of which is to render the cultivating of certain districts possible without fences, must, in order to carry out its spirit, be held to forbid the trespassing of stock therein owned beyond the limits of the district, as well as stock owned within the limits thereof, though the letter of the statute may seem to include only the latter.

APPEAL from the Circuit Court of Lowndes County.

HON. W. M. ROGERS, Judge.

A. Y. Locke is a resident of supervisors' district No. 5, Lowndes County. Mrs. V. A. Anderson is a resident of Clay County, near the Lowndes County line. Mrs. Anderson's cattle were found trespassing upon the cultivated fields of Locke, which fields were without fences, and he took them up, put them in his pasture, and immediately notified Mrs. Anderson that she could get them by paying the charges fixed by an act of 1882 (Acts of 1882, page 232), entitled "An Act to prevent stock running at large in certain supervisors' districts of Lowndes County, this State." Mrs. Anderson, not having appeared, Locke delivered them up to one Fort, the nearest justice of the peace (who was also his father-in-law), and the cattle were sold by Fort. It is admitted that the act above referred to was throughout both the seizure and disposition of the cattle complied with. Mrs. Anderson first brought an action of replevin against Locke for the cattle, but afterward changed it into an action of assumpsit for their value and damages. The cause having been submitted to the court by argument, it was decided in favor of the defendant, Locke, and the plaintiff appealed.

*Barry & Beckett,* for the appellant.

1. We insist the act of 1882, Acts 1882, pages 232, 233, does not apply to appellant. She was a citizen of *Clay County,* living near the Lowndes County line, and the statute only required the

residents of districts No. 4 and 5, of Lowndes County, to keep up their stock. Acts 1882, page 232, § 1.

It does not provide for residents of Clay County keeping up their stock.

2. "At common law landowners were never bound to fence or inclose as against each other, but each was only bound to keep his stock on his own premises." *Raiford* v. *M. & C. R. R. Co.*, 43 Miss. 240 ; 2 Black's Comm. 209–211.

Hence, at common law each owner was bound to keep up his stock, and not to fence his land. But the act of 1882 only requires "*residents* of supervisors' districts 4 and 5, of Lowndes County, to keep their stock within a safe inclosure, or otherwise confine or herd them." Acts 1882, page 232, § 1.

"It is well settled by reason and authority that the owners of cattle may permit them to go at large in this State without incurring any responsibility as *trespassers*." *N. O., J. & G. N. R. R.* v. *Field*, 46 Miss. 578.

3. If the taking of the cattle was legal it became illegal by attempting to turn them over to Fort, who was the nearest justice of the peace, it is true, but who was the *father-in-law* of the appellee, Locke. A justice cannot act in a case in which *he is interested, however remotely*, and the legislature could not authorize such a thing. Cooley on Const. Lim. marg. page 410–414.

*William Baldwin*, for the appellee.

As to the act of 1882, pages 232, 233, if that act applies to the cattle in question, there can, of course, be no liability on the part of appellee. The point, however, was attempted to be made by counsel, in argument of this case in the court below, that all parts of the statute having to be taken as a whole, and a harmonious unit made of it, that to accomplish that, § 1 of the act of February 15, 1882, Acts 1882, pp. 232, 233, must be held as a restraint upon the subsequent sections, and hence the penalty of the act could not be laid, save upon "persons residing in supervisors' districts 4 and 5, in Lowndes County."

It is submitted that the statute in its enacting part is plain and free from any doubt or ambiguity. It makes no exception in

favor of cattle of contiguous districts or counties, and the courts can make none.

*G. A. Evans,* on the same side.

The main question here is, does the act of 1882 apply to cattle coming from Clay County ? We confess ourselves at a loss to see why it does not. Certainly nothing in the act restricts it to cattle whose owners live in Lowndes County, or in district 5.

It would totally defeat the purpose of the legislature to so construe it.

The argument seems to be, that because the first section declares that " all persons residing in supervisors' districts 4 and 5 " are required to keep their stock within an inclosure, and nothing is said about the residents of the balance of the world, that not only are the residents of the balance of the world not required to keep up their stock, but that the entire balance of the statute, which is in reference to *cattle,* not *individuals,* is restricted to *cattle owned by residents* of those districts.

The argument might just as well go a step further, and say that as the first section only requires " persons RESIDING " in the district to keep up cattle, it does not apply to any person or the cattle of any person not " residing " in the district, and so the cattle on half the large farms in these districts owned by persons " *residing* " in Columbus was not embraced, and they might be permitted to stray and trespass anywhere, simply because the owner " *resided* " in Columbus, or beyond the district.

The statute is *local,* and applies to all cattle which come within the territory to which it is applicable.

If non-residents permit their cattle to go into this territory they become amenable to the laws there in force. 1 Dillon Municipal Cp., 3d ed., § 355 ; Ib., note 3 to § 351.

ARNOLD, J., delivered the opinion of the court.

The common-law doctrine which requires the owner of stock to keep them off the land of others, to fence in his own, rather than to fence out the stock of others, and makes him liable for trespass committed by them, and precludes him from recovering damages for

any injury they may sustain by going on the land of others, does not prevail in this State. But the subject is within the power and control of the legislature, and no legal right is violated, and there is no cause to complain, when one is required by law to keep his stock off the land of others.

It is admitted that in the seizure and disposition of the stock in controversy, the act entitled " An Act to prevent stock running at large in certain supervisors' districts of Lowndes County, in this State," approved February 15, 1882, was in all things complied with. This admission constitutes a complete bar to appellant's claim. The purpose declared by that act was to prevent stock running at large, and to render the cultivation of the soil and crops in the districts named secure, without fences, from depredations by stock. This purpose would be defeated by limiting the operations of the act to stock whose owners resided in the territory specified in the act. It is true that only such owners are expressly required by the act to inclose, confine, or herd their stock, but the second section of the act provides that *any animal or animals* found loose or trespassing upon the fields, or cultivated lands, of any person (within the specified territory, must be supplied by intendment), other than the owner of such animal or animals, may be taken up, confined, etc., and that notice shall be given without delay to the owner, etc.

By disregarding the spirit and intent of the act, the animal or animals, designated in the second section of the act, might be appropriately restricted to such animals as are expressly required by the first section to be inclosed, confined, or herded, but when the provisions of a statute are doubtful, but the design and object clear, the latter should upon familiar principles guide in its construction.

There is no unwarranted exercise of power by the legislature manifested in the act. The justice of the peace who advertised and sold the stock, did not act judicially in the premises, and his proceedings are not vitiated by the fact that appellee was his son-in-law.

*Affirmed.*