# Street v. Hooten *et al.*

*Petition for Writ of Common Law Certiorari.*

1. *Constitutional law; validity of act amending an act extending stock law district; when subject sufficiently expressed in the title.*—The title of an act "to amend an act entitled 'an act

[Street v. Hooten *et al.*]

to provide for the extension of stock law in Clay county,' approved February 11, 1897," expresses as the subject of said act the extension of the stock law district for Clay county to territory which has not been subject to its operation, and probably could not be so subjected under the provisions of the original law; and the body of the act treating of such subjects does not render said act subject to constitutional objection in that the subject is not clearly expressed in its title.

2. *Same; same.*—In such an enactment, the fact that the act sought to be amended was unconstitutional and void has no bearing upon the question as to whether the subject of the amendatory act is expressed in its title, since the invalidity of the earlier act does not prevent the words used in the title of the latter act from carrying their accustomed signification.

3. *Same; constitutionality of act to extend the provisions of stock law.*—An act "to amend an act entitled an act to provide for the extension of stock law in Clay county, approved February 11, 1897," which provides a perfect system of law whereby territory adjacent to the stock district established in said county, under the act of the General Assembly of 1890, may be incorporated therein and regulated after such incorporation, is, in itself, a complete enactment, and is not subject to the constitutional objection that it attempts to extend the provisions of the act of 1890, without re-enacting them and publishing them at length.

4. *Establishment of stock law district; act not void for failure to provide notice.*—An act of the General Assembly providing for the establishment of a stock law district is not void because it fails to provide for any notice of the application required to be filed with the commissioners court for the establishment of such district.

APPEAL from the County Court of Clay.

Tried before the Hon. W. J. PEARCE.

On June 5, 1899, the appellants and others describing themselves as "persons living or owning real property adjacent to a stock law district in the county of Clay," and desiring to have certain adjacent territory incorporated in such stock law district, filed in the commissioners court of Clay county, a petition in which said adjacent territory was described by government numbers, and in which petition it was averred that it was to the interest of the citizens of said new district

to have the same attached or added to said stock law district, "and to be governed as now provided by the stock law in said county"; that the majority of the freeholders in said territory were desirous of having the same added to said stock law district; and that petitioners had given notice as required by law of the making of this application.

The prayer of this petition was that the commissioners court make an order declaring such territory to be placed in the stock law district of Clay county. The petition was filed under the act approved February 23, 1899, amendatory of the act approved February 11, 1897.

J. W. Hooten and two other citizens, who owned property in the territory described in the petition, appeared before the commissioners court and resisted said petition and filed demurrers thereto. The grounds of this demurrer were substantially as follows: 1. That the act under which the petition was filed was unconstitutional and void, in that it was in conflict with section 2, Article IV of the Constitution. 2. That said act was unconstitutional and void in that the subject of said act was not clearly expressed in its title, and it seeks to extend the provisions of an existing stock law in Clay county, by reference to its title, without re-enacting and publishing it at length. 3. That such act purports to amend a previous act, and contains new and independent provisions and sections. 4. That while said act purports to be an amendatory act, it is original in respect of all of its sections, with the exception of section 1. 5. That the lines of such district sought to be established are run in arbitrary, capricious and unreasonable manner, excepting many portions or subdivisions of sections and parts of lands, so as to except the property of persons opposed to said stock law, although adjacent to the district or surrounded by the lands included therein. The commissioners court sustained these demurrers, and ordered the petition dismissed. Thereupon the said petitioners filed a petition in the county court

of Clay county, addressed to the judge of said court, setting forth the facts as stated above, and making the petition filed in the petitioner's court, the demurrers and orders of the court exhibits thereto; and it was averred in said petition that the commissioners court dismissed the petition filed therein and refused and still refuses to grant the prayer of said petition, although the petitioners and signers of said petition offered to show that a majority of the freeholders owning real estate in the territory described in said petition are desirous of having said territory added to the stock law district, and offered to show all facts necessary to the extension of the stock law in Clay county to said territory under the provisions of the act approved February 23, 1899, and that it had complied with all the requirements of said act. It was then averred in the petition filed in the county court that the judgment sustaining the demurrers to the petition in the commissioners court was void and illegal, and that the same should be annulled, quashed and vacated. The members of the commissioners court and the judge of probate of said county, as *ex-officio* chairman of the court of county commissioners, and J. M. Hooten and associates who had resisted the petition in the commissioners court were made parties respondent to this bill.

The prayer of the petition was for the issuance of a common law writ of *certiorari*, to the court of county commissioners, requiring them to send up the records, papers and proceedings in said cause, and that upon the hearing of this petition the said judgment of the commissioners court sustaining the demurrers be quashed, vacated and annulled.

The members of the commissioners court and the judge of probate demurred to the petition for *certiorari* and assigned substantially the following grounds therefore:   1. That the facts stated in such petition show that the demurrers of J. W. Hooten and others were well taken, and the judgment of the commissioners court sustaining them were proper and correct. 2. That the statute under which said proceedings were had in the commissioners court were unconstutional

and void as being in conflict with and violative of section 2, Article IV of the Constitution of Alabama. 3. For that the lines of such proposed stock law district, as shown by the petition, filed in the commissioners court, are run in an arbitrary and capricious manner, and such district as so laid off was evasive of the spirit and reason of the statute under which the petition was filed.

J. W. Hooten and others separately demurred to the petition for *certiorari* on the ground that they were improper parties, in that the proceeding was one to revise the proceedings. of the court of county commissioners.

Upon the submission of the petition for *certiorari*, upon the demurrers, there was a judgment rendered sustaining said demurrers and ordering that the petition for the common law *certiorari* be dismissed. From this judgment the petitioners appeal and assign the rendition thereof as error.

KNOX, BOWIE & DIXON and BORDEN H. BURR, for appellant.—It is a familiar and universal rule that a statute will not be declared unconstitutional unless the court is clearly convinced that it cannot stand. All doubts are resolved in favor of its validity. To doubt it is to sustain it.—*Jones v. Black,* 48 Ala. 540; *Wilburn v. McCauley,* 63 Ala. 436; *Zeigler v. S. & N. R. R. Co.,* 58 Ala. 594; *State of Ala. v. Rogers,* 107 Ala. 444.

"If certain sections only of a statute are to be amended, the whole of this statute, including unamended as well as amended sections, need not be set out, but only the latter. It is a sufficient compliance to set out the law as amended without reciting the old law as it stood before the amendment, or specify the changes made."—23 Am. & Eng. Ency. of Law, 280; *Wilkinson v. Kitler,* 59 Ala. 306; *Montgomery v. The State ex rel. Enslen,* 107 Ala. 384.

"The rule is that if some of the provisions of a statute are violative of the Constitution, while others are con-

sistent with it, the latter will be maintained if they can be separated from and stand without the unconstitutional parts of the law. The courts will treat the unconstitutional parts as if they were stricken out of the statute. In the application of this rule it is not material that the constitutional and unconstitutional provisions are in the same section."—*Lowndes County v. Hunter*, 49 Ala. 509; *State v. Street et al.*, 117 Ala. 212; *Harper v. State*, 109 Ala. 31.

It is well settled that legislative enactments are not any more than any other writings to be defeated on account of mistakes, errors or omissions, provided the intention of the legislature can be collected from the whole statute, and, when it is clear that a word or a sentence is surplusage, it will be rejected and the intention of the legislature upheld.—*Harper v. State*, 109 Ala. 31; *Lowndes County v. Hunter*, 49 Ala. 509; Endlich on Interpretation of Statute, § 301.

There is no evil to be apprehended by the mere reference to other acts and statutes for the form or process and procedure for giving effect to a statute otherwise perfect and complete.—*Cobb v. Vary*, 120 Ala. 267; *State ex rel. v. Rogers*, 107 Ala. 444; *Towns v. State*, 111 Ala. 3; *Birmingham Union R. R. Co. v. Elyton Land Co.*, 114 Ala. 70.

An act in itself will be sustained without reference to the constitutionality of the act amended.—*Falconer v. Robinson*, 46 Ala. 340; *State v. Rogers*, 107 Ala. 444; *Cobb v. Vary*, 120 Ala. 267.

WHITSON & GRAHAM, *contra.*—The act of 1899 under which the proceedings in the case were had, is violative of section 2 of Article IV of the Constitution of 1875, and, therefore, subject to the objections raised by the demurrer.

Both from its caption and its body the intent is plain to simply add new stock law districts to existing ones, and that they then "be governed by the law prohibiting stock from running at large in Clay county." Its sole purpose is not to create a stock law, but to create a new district to come within the provisions of an exist-

32

ing stock law. This is further emphasized by section 3
of the act, that it shall not be construed so as to con-
flict with the stock law now in force in Clay county. No
attempt is made to re-enact the provisions of the law
sought to be extended; and we submit that it is a flag-
rant violation of said section of the Constitution.—*Stew-
art v. Commissioners,* 82 Ala. 209; *Rice v. Westcott,*
108 Ala. 353; *Bay Shell Road v. O'Donnell,* 87 Ala. 376;
*Miller v. Berry,* 101 Ala. 531; *Stewart v. State,* 100 Ala.
1; *Judson v. Bessemer,* 87 Ala. 240.

The amendatory act (Local Acts, 1898-99, p. 1776) is
equally unconstitutional and in conflict with the same
article and section of the Constitution. Its title is an
act to amend an act entitled, setting out the title of such
act. It purports throughout to be an amendatory act.
The amendment to section 1 contains identically the
same provisions as section 1 of the former act in respect
to the extension of stock law to such new districts "in
which stock shall not run at large, and shall be
governed by the law prohibiting stock from running at
large in Clay county." It follows that in so far as sec-
tion 1 of the amendatory act endeavors to extend the
provisions of the stock law prohibiting stock from run-
ning at large, it is unconstitutional. See authorities
cited, *supra,* under first proposition, also *Rogers v. Tor-
but,* 58 Ala. 523; *Ex parte Cowert,* 92 Ala. 94; *Todd
v. State,* 85 Ala. 339; *Maxwell v. State,* 89 Ala. 150;
*Rice v. Westcott,* 108 Ala. 353.

The added sections to the amendatory act are in di-
rect conflict with the spirit, purpose and letter of this
provisions of the Constitution (§ 2, Art. IV.)—*Bates v.
State,* 118 Ala. 105-106; *Ex parte Pollard,* 40 Ala. 100;
*Tuscaloosa Bridge Co. v. Olmstead,* 41 Ala. 9; *State v.
Southern Ry. Co.,* 115 Ala. 225-6; *City of Mobile v.
L. & N. R. R. Co.,* 124 Ala. 132.

The subject matter of the additional sections are not
"clearly expressed in the title" and are not cognate to
the title expressed in the caption. The caption is to
amend an act entitled, etc., to provide for the extension
of the stock law in Clay county.

Extension is defined as, "the act of extending, or the state of being extended, a stretching out; enlargement in breadth or continuation of length, augmentation, expansion."—Webster's International Dictionary. They create a stock law with pains and penalties for allowing stock to run at large, new original and variant from any extension of an existing law. It is independent legislation. The additional sections are unconstitutional for these reasons.—*City of Mobile v. L. & N. R. R. Co.*, 124 Ala. 132; *State v. Southern Ry.*, 115 Ala. 250; *Ex parte Gayles*, 108 Ala. 514; *Wolf v. Taylor*, 98 Ala. 254; *Ex parte Reynolds*, 87 Ala. 139.

McCLELLAN, C. J.—An act approved December 10th, 1890, provided for the establishment of "stock-law-districts" in Clay county by a majority vote of the electors of a beat or that part of a beat in which it was proposed to establish such district. This act made it unlawful and punishable by a fine of not less than five nor more than fifty dollars for any person to permit stock to run at large in any district established under it, and provided further "that for any damage done by stock running at large in such prohibited territory the owner of such stock shall be liable to the injured party," etc., etc., and that judgment for such damages should be a lien on the depredating stock, to be enforced by an order of seizure, etc., etc.; that prosecutions of actions for damages "may be tried before any justice, or notary public with justice's jurisdiction in the beat where the offense or damage occurs, and when the amount of damages does not exceed fifty dollars;" that if the justice of the peace or notary public is incompetent, or there is a vacancy in such office, then such trial shall be had before a justice of the peace or notary public of the nearest beat thereto, and that for such trials and prosecutions said justice's courts shall always be open; but three days shall be given to the opposite party." The act also provides that such districts shall be inclosed with a lawful fence, etc. It seems that prior to February 11th, 1897, one or more such stock districts had been established in Clay county. At

least on that day another act was approved "To pro-
vide for the extension of stock law in Clay County."
This act is as follows: "Section 1. *Be it enacted by
the General Assembly of Alabama, That* from and after
the passage of this act, that any person or persons liv-
ing adjacent to a stock law district in the county of
Clay desiring to become attached to said stock law dis-
trict for the purpose of preventing stock from running
at large, in a specified territory, adjoining a stock law
district may petition the court of county commissioners
of said county setting forth the lines of the proposed
district to be added to said adjoining stock law dis-
trict, that if in the judgment of said court it will be to
the interest of the citizens in said new district to be
attached or added to said stock law district and be
governed as now provided by law in said county, they
may grant an order that the said new district shall be
a stock law district in which stock shall not run at
large and shall be governed by the law prohibiting stock
from running at large in Clay County, Ala.; Provided,
that the citizens living in said new district shall build
a fence to prevent trespass by stock owned by citizens
living out of the stock law district.

"Sec. 2. *Be it further enacted,* That all applications
by petitions to said court as herein provided shall be
advertised fifteen days prior to the sitting of said court
by posting three notices, one at the court house door of
said county, and two in the community of the proposed
district.

"Sec. 3. *Be it further enacted,* That nothing in this
act shall be so construed as to conflict with the stock
law now in force in Clay County."

The expressed purpose of this act, and its effect if
valid, is to extend the provisions of the act of December
10th, 1890, to parts of Clay county to which it did not
before apply and to which, it may well be, it could
never have been extended under its own terms, and
this without any other reference to the older act than
as "the stock law of Clay County," and "the law pro-
hibiting stock from running at large in Clay County,

Ala.," and without re-enacting and publishing at length the provisions so extended. It would seem that this act of 1897 is violative of the organic mandate that * * * "no law shall be revived, amended, or the provisions thereof extended or conferred, by reference to its title only; but so much thereof as is revived, amended, or conferred shall be re-enacted and published at length," and is therefore void.—Const., Art. IV, § 2; *Stewart v. Commissioners*, 82 Ala. 209.

On February 23d, 1899, a third act relating to the running at large of live stock in Clay county was approved. The title of this act is: "To amend an act entitled 'an act to provide for the extension of stock law in Clay County,' approved February 11th, 1897." In the body of this act of 1899 the subject of the extension of the stock law for Clay county to territory which had not been subjected to its operation, and probably could not be, under the provisions of the original law, the act of 1890, is treated of, and all its provisions are germane and cognate to that subject. Now that clearly is the subject which is expressed in the title quoted just above, for a title which expresses a purpose to amend an earlier enactment, referring to the earlier enactment by its title in which the subject of the proposed legislation is clearly expressed, is no more or less than the expression of a purpose to deal with the subject so expressed in the title of the earlier enactment. And it is of no consequence in this connection that the earlier enactment may be unconstitutional and void, and that the later one purports to amend it: These considerations do not prevent the words used in the title of the last act from carrying their accustomed significance: It cannot change their meaning that they are quoted from the title of the invalid statute, any more than if they were quoted from any other writing. And the fact that the later act by its title proposes to amend the earlier invalid enactment, has no bearing upon the question whether the subject of the later act is expressed in its title. The subject of the later act is the extension of the stock law of Clay county, and this is none the less so because of its being proposed to deal with that

subject by way of emendation of the former attempted
enactment. And hence our conclusion that the act of
February 23d, 1899, clearly expresses its subject in
its title.

The further inquiry is: Does the act of 1899, as did
that of 1897, attempt to extend the provisions of the
act of 1890 without re-enacting them and publishing
them at length? We think not. An examination and
comparison of the two acts will disclose that no pro-
vision of the act of 1890 is extended or attempted to
be extended to territory not covered by that act and
proceeding under it, by the act of 1899 except those
which are in fact re-enacted and incorporated in full
in the latter act and published at length as a part of it.
The last act, indeed, provides a perfect system of law
whereby territory adjacent to a stock district established
under the first may be incorporated therein and regulat-
ed after such incorporation; and is in itself a complete
enactment. The provisions for such incorporation are
different from the provisions of the original act for the
*establishment* of stock-law districts; but they require to
their operation the aid of no provision of the original
act not found in this one; and all rights, duties, lia-
bilities, penalties and proceedings intended to be given,
imposed or prescribed under the new act are fully set
forth therein; and in so far as its provisions are those
of the original act they are re-enacted and published at
length, and in so far as new provisions are intended
to be made they take the place of those in the old act,
and are in themselves complete and self-executing ex-
pressions of the legislative will. So that the act of
1899 may be executed in all particulars without any
reference to the act of 1890, or to the operation of the
latter act further than that a stock-law district must
have been established under it to which the territory
proposed to be dealt with under the act of 1899 is ad-
jacent. It is true that in the first section of the act
of 1899 there is a provision that the adjacent districts
established under it "shall be governed by the law pro-
hibiting stock from running at large in Clay County,

[Street v. Hooten *et al.*]

Alabama," the reference being to the act of 1890, but this provision is rendered innocuous by the fact that every provision of the "law prohibiting stock from running at large" in said county having operation in the territory treated of in the act of 1899 is re-enacted in and by that statute in full and published at length.

This act of 1899 is not void for its failure to provide for any notice of the application to the commissioners' court for the incorporation of adjacent territory into an existing stock law district. No man has such estate or interest in the lands of another as entitles him to turn his live stock at large upon it, and a requirement that he keep his stock on his own premises deprives him of no property right or other right assertable in any court. The legislature might, in the exercise of its police power, have forbidden the running at large of all stock in Clay county or in any part thereof absolutely, without notice to owners of stock there; and it was clearly competent for that body to confer upon the commissioners' court the power to designate the districts in which the stock law enacted by the legislature should operate and be effective without any notice to persons living and owning stock within any such district. The act of 1899 does, however, clearly contemplate that the commissioners' court shall enter upon an investigation as to whether it is to the interest of the citizens of the district, or according to the wishes of the freeholders of the district for it to be enacted into a stock-law district, and such investigation should of course be made.

Here then we have in the enactment of 1899 a statute the subject of which is clearly expressed in its title, and which in and of itself is a complete act, in nowise dependent upon the act of 1890 or upon any other law for any provision necessary to its full effect and operation according to the manifest legislative intent.

Under the act of 1899, we apprehend that the districts to be incorporated with existing stock-law districts should at least embrace all the territory lying within their boundary lines. For instance, territory embracing the whole of a township—using the word as in common parlance to denote territory six miles square—

except some part lying away from the township lines and surrounded by other lands of the township, cannot under any proper construction of the statute be established into a stock-law district. And so, for another instance, a section, excluding the southeast quarter of the northwest quarter, or the like—the excluded part being entirely surrounded by that proposed to be embraced—should not be established as such district. And the same might be true in respect of land materially jutting into the general contour of the proposed district, or where there are quarter section lying over upon and other land extending from the township line into the proposed district, where the general line of the district follows the township line; and the like cases. The *rationale* of this is obvious. To construct, so to speak, a district entirely surrounding land not nominally embraced in it would be to subject the proprietor of such land to all the burdens of this law, and in effect to embrace his land within the prohibitory district, without allowing him a voice as a freeholder in the matter; and the statute provides for the ascertainment of the wishes of all the freeholders in the proposed district. But this question did not properly arise in this case on the hearing before the commissioners' court. The petition does not show any such case as is instanced above; and the demurrer intended to raise the point was essentially a speaking demurrer. The point should be made by answer.

Assuming, therefore, that the act of 1897 is unconstitutional and void, the petition should yet have been sustained under the act of 1899. The county court erred in not quashing the judgment of the commissioners' court on the demurrer. The judgment of the county court will, therefore, be reversed, and the cause will be remanded to the county court with directions to that court to enter a judgment quashing the order or judgment of the commissioners' court sustaining the demurrer to the petition filed in said commissioners' court.

Reversed and remanded.