## BONNETT *v.* BROWN.

(Division B. Jan. 6, 1930. On Suggestion of Error, Jan. 20, 1930.)

[125 So. 427. No. 28288.]

**O. F. Moss,** of Lucedale, for appellant.

**T. H. Byrd,** of Lucedale, for appellee.

**Ethridge, P. J.,** delivered the opinion of the court.

F. C. Brown, the appellee, took up certain hogs belonging to C. M. Bonnett found upon the premises of Brown in George county, Mississippi. He notified Bonnett to take the hogs and confine them. Bonnett insisted that Brown "fix his fence," and that he continue to operate as he had before the passage of the state-wide stock law, which Brown refused to do. Bonnett confined the hogs for a few days so as to give Brown time to repair his fence, and then turned them out upon the range again. The hogs came upon Brown's place again and were taken up by Brown and confined, and the owner notified by written notice. Bonnett refused to keep the hogs confined, and notice was given under the first part of section 3 of chapter 263, Laws of 1926, to a justice of the peace, there being no ranger in George county at that time, and the justice of the peace proceeded to deal with the stock, as provided in the chapter on estrays (chapter 26 of Hemingway's Code of 1927); whereupon Bonnett sued out a writ of replevin before the said justice of the peace and the cause came on for trial before the justice of the peace, and a verdict and judgment was rendered for Bonnett; from which judgment Brown appealed to the circuit court where there was trial de novo at the end of which the court granted a peremptory instruction for Brown and entered judgment that the hogs, which had been bonded by Bonnett under provisions allowing the plaintiff to bond them in the first instance

where they had been taken from his possession within thirty days from suing out the writ of replevin, be restored to the said Brown.

The appellant, Bonnett, sought to show by the record of the board of supervisors, and the members of the board, that the board had never entered any order declaring the stock law to be in force in that county, which was excluded by the court. He thereupon tried to prove that it was the custom of the people of George county to permit live stock to run at large upon range, which evidence the court also excluded.

The value of the hogs was proven, and there was proof as to what proceedings had been taken before the justice of the peace, but there was no judgment entered in the court below fixing the value of the hogs, nor alternative provision to pay the opposite party's' interest in the replevin property.

It appears that this suit is for the purpose of testing the constitutionality of chapter 263, Laws of 1926, entitled "An act to encourage the live stock industry, to create a state-wide stock law, and to prevent the spread of the Texas fever ticks." Sections 1 and 2 of the act reads as follows:

"Sec. 1. Be it enacted by the legislature of the state of Mississippi, That there is hereby created a state wide stock law which shall be uniform throughout the state.

"Sec. 2. That any person or persons owning or having under their control such live stock as cattle, horses, mules, jacks, jennetts, sheep, goats or hogs shall not permit such live stock to run at large upon the open or unfenced lands but shall keep such live stock confined in a safe enclosure."

These two sections are conceded by the appellant to be within the legislative power and constitutional. It is insisted, however, that section 3 renders the act unconstitutional, because it denies the owner of the stock due

process of law, and deprives him of property without due process of law. This section reads as follows: "Sec. 3. That any such live stock as referred to in section 2 of this act found running at large or upon the open and unfenced lands may be taken up and confined within a safe inclosure by any person, and if infected with or exposed to the Texas fever tick may be dipped by such officers or person having such animal or animals so confined until such live stock are freed from such infection, under such rules and regulations as prescribed by the live-stock sanitary board, and the charges for so taking up and confining, together with such damage, if any, shall be a special or first lien upon such live stock and unless the same is paid by the owner or person having such live stock under their control, when so notified, then such live stock shall be sold as now provided for in the sale of estrays and cost of taking up and confining, damages, if any, together with the cost, shall first be deducted, and the balance, if any, shall be paid to the owner or person having such live stock under their control. If the owner of such live stock be unknown, then the sheriff or other person duly authorized shall post notice in the manner now provided for in the sale of personal property, and if at the expiration of such time, such live stock has not been claimed and all legal charges paid, the sheriff or other person authorized shall proceed to sell such live stock deducting from the proceeds of such sale all charges paying the balance, if any, into the county depository as now provided for in the sale of estrays and the officer or person taking up such live stock in addition to all other charges as now allowed by law shall be allowed fifty cents per head for each time such live stock is dipped, if infected with, or exposed to the fever tick."

It will be noted from the provision of section 2 that every person owning and having under his control live stock of the kind named in the section is prohibited from

permitting them to run at large upon the open or unfenced lands, but requires them to keep such live stock confined in a safe inclosure. Section 3 provides that, when such stock are found running at large, they may be taken up and confined in a safe inclosure by any person, and, if infected with the Texas fever tick, may be dipped at the expense of the owner of the animals, under the rules and regulations of the live stock sanitary board, and provides that the charges for taking up and confining such animals, together with damages, if any, shall be a lien upon the stock unless paid by the owner when notified.

It is first complained that the statute here does not fix any charges for the taking up of the live stock, nor the amount of damages that may be recovered, and that renders it void. The section further provides that, unless the owner pay such charges, such live stock shall be sold as now provided for the sale of estrays, and the costs of taking up and confining, damages, if any, together with the costs, shall be deducted, etc., if the owner of such live stock be known. It then provides that if the owner of the live stock be unknown, then the sheriff, or other person duly authorized, shall post notice in the manner now provided for the sale of personal property, and if, at the expiration of such time, such live stock has not been claimed and legal charges paid, the sheriff shall sell the same, etc. It is claimed that in the latter provision the sheriff is not required to give the owner any notice nor to have any hearing as to the facts by which the live stock is to be condemned or forfeited and the expenses paid, and that such provision is unconstitutional. It is unnecessary to consider the latter part of the statute with reference to the sheriff's power and duty where the owner is unknown as it is not involved in this controversy; the present controversy is controlled by the first part of the section providing that the property shall be

dealt with, when the owner is known, as provided in the chapter on estrays.

The chapter on estrays, chapter 26 of Hemingway's 1927 Code, sections 1614 to 1641, provides a scheme for dealing with estrayed animals and has been in the statute throughout the history of the state, and, we think, is a valid system of dealing with animals running at large when prohibited by law from doing so, or when estraying from the control and premises of the owner. By section 1972 of Hemingway's Code of 1927 (section 2191, Code of 1906), the fee and expenses of estraying are provided for. In Anderson v. Locke, 64 Miss. 283, 1 So. 251, in the first syllabus the doctrine is stated: "The common-law doctrine which requires the owner of stock to keep them from trespassing upon the land of others has no application here; but the whole subject is in the power and control of the legislature, and it may, without violating any legal right, require an owner to so confine his stock as to keep them off the land of others."

It is therefore, within the constitutional power of the legislature to enact chapter 263, Laws of 1926, so as to prevent animals from running at large, and to require them to be confined within safe inclosures. The law forbidding the animals to run at large and requiring them to be kept in a safe inclosure being constitutional, the owner of the animals found running at large is necessarily responsible for injuries and damages inflicted by them.

Section 3, referring to a procedure for dealing with animals running at large, is clearly a constitutional provision in so far as it directs the procedure to be in accordance with the estray chapter. It was not necessary for the legislature to duplicate the provision of the estray chapter in the stock law chapter, but it could adopt it by reference, in the manner which it did do.

By the chapter on replevin any person deprived of the rightful possession of personal property may institute

the proceedings in replevin for obtaining that possession, and it is, of course, a remedy provided by law with a right for hearing production of evidence, etc., constituting due process of law. The plaintiff in the court below, the appellant here, invoked and obtained a hearing in which his contentions and rights were set forth and adjudicated. We find no constitutional objection so far as applied to the facts before us, and it is not necessary to pass upon the features of the act not before us, because, if they are unconstitutional (which we do not mean to intimate an opinion on), still it is a separable provision and did not affect the validity of the other parts of the act.

The judgment of the court below, however, should have found the value of the hogs and the amount of the fee and costs involved, all of which are ascertainable from the record; and it will be necessary to reverse the judgment and enter judgment here for the appellee, properly conditioned and modified so as to permit the plaintiff on payment of the fee and costs to retain the hogs.

Reversed, and proper judgment for appellee.

### On Suggestion of Error.

**Anderson, J.,** delivered the opinion of the court.

The suggestion of error is sustained, in so far only as the judgment of the trial court awarded appellee the possession of the hogs involved. The judgment should have been that appellant either pay appellee the amount of the latter's interest in the hogs, or that he restore the hogs to appellee in order that appellee might proceed under the statute to realize his interest in them.

The judgment that should have been entered will be entered by this court. In all other respects the suggestion of error is overruled.

Sustained in part, and overruled in part.