THOMPSON ET AL., RESPONDENTS, *v.* TOBACCO ROOT CO-OP. STATE GRAZING DISTRICT ET AL., APPELLANTS.

No. 8805.

Submitted February 19, 1948. Decided May 15, 1948.

193 Pac. (2d) 811.

446

Mr. Frank E. Blair, of Virginia City, for appellants. Mr. Blair argued the cause orally.

Mr. Rockwood Brown, Mr. Horace S. Davis, of Billings, Mr. Lyman H. Bennett, Jr., of Virginia City and Mr. Marion B. Porter and Mr. Norman Hanson, both of Billings, for respondents. Mr. Davis, Mr. Hanson and Mr. Bennett argued the cause orally.

Mr. P. F. Leonard, of Miles City, Mr. Thomas Dignan, of Glasgow, Mr. Ralph J. Anderson, of Helena, Mr. E. E. Fenton, of Hysham, Messrs. Burns & Thomas, of Chinook, Mr. R. V. Bottomly, Atty. Gen., and Mr. Clarence Hanley, Asst. Atty. Gen., amici curiae. Mr. Hanley, Mr. Anderson, Mr. Fenton and Mr. Leonard argued the cause orally.

MR. JUSTICE ANGSTMAN delivered the opinion of the court.

This is an appeal from a judgment entered in favor of plaintiffs after defendants' demurrer to the complaint was overruled and they declined to plead further.

The judgment specifically finds that Chapter 208, Laws of 1939 and Chapter 199, Laws of 1945, are both unconstitutional and void.

The complaint attacks these statutes upon several grounds and since the trial court's judgment is general it must be sustained if any one of the grounds contended for has merit.

In considering the several contentions we keep in mind that

██ ██ it is our duty to resolve all doubts in favor of the validity of the Act. Likewise, we keep in mind that it is the power of the legislature and not policy with which we are concerned.

Chapter 208 of the Laws of 1939 is what is commonly called the Grass Conservation Act. It provides for the creation of co-operative non-profit grazing districts and empowers them to cooperate with the federal government to the end that there may be unified control of grazing land. Chapter 199, Laws of 1945, amends Chapter 208 in several particulars.

The first contention made by plaintiffs is that section 26 of Chapter 208, as amended by Chapter 199 is unconstitutional.

That section, so far as material, provides:

"(1) No owner or person in control of livestock shall permit the same to run at large, or under herd, within the exterior boundaries of any state district, unless the owner or person in control of such livestock shall first obtain a grazing permit for same from such state district; and the owner or person in control of such livestock running at large, or under herd, within a state district, without a permit from the district, or in excess of such permit, shall be liable for all damages sustained thereby by any member. * * *

"(2) The state, district or its duly authorized agent controlling the land upon which such wrongful entry is made by trespassing livestock, may take into its possession such livestock and shall reasonably care for same while in its possession and may retain possession of said livestock and have a lien and claim thereon as security for payment of such damages and reasonable charges for the care of said livestock while in its possession and may retain possession of said livestock and have a lien and claim thereon as security for payment of such damages and reasonable charges for the care of said livestock while in its possession. The state district taking up such livestock shall, within seventy-two (72) hours after taking possession thereof, notify said owner, owners, or person in charge thereof, by a notice in writing, describing said livestock by number of animals and brands thereon, if any, the amount of damages claimed to date, and the charge

per animal unit per day for caring for and feeding the same thereafter, such damages and charges not to exceed fifty cents (50¢) per animal unit per day, and describing by general description, the location of the premises upon which said livestock is held, and requiring such owner or owners, within ten (10) days after receiving said notice, to take said livestock away after making full payment of all damages and costs of said livestock. In case the parties do not agree as to the amount of damages, the state district taking up such livestock, may, at the expense of the owner, retain a sufficient amount of such livestock to cover the amount of damages claimed by the state district. Provided, however, that the owner may, upon furnishing a good and sufficient bond, conditioned for the payment to the state district of all sums, including costs that may be recovered by said state district in a civil action to foreclose its lien, have returned to him of all livestock held as aforesaid, and said state district shall be liable to such owner for any loss or injury to said livestock accruing through the state district's lack of reasonable care. If the state district taking up livestock shall fail to recover in a civil action a sum equal to that offered to the state district by the owner of the livestock, the former shall bear the expense of keeping and feeding same while in its possession. * * * Upon demand, the state district or its authorized agent controlling the land, or party in charge of such livestock, shall release and deliver possession of such livestock to the owner or person entitled thereto, upon payment of damages and charges; but said payment of damages and charges shall not act as a bar to the prosecution of said person, owner or persons in control of such livestock, as hereinbefore provided. If the amount of damages or costs demanded by the party taking up such livestock is in excess of the actual damage and actual costs, the owner or person in charge of such livestock, may pay same under protest and thereafter sue to recover the amount paid in excess of the actual damages and reasonable costs, provided suit to recover same is filed in the district court within sixty (60) days after payment.''

If the owner of the livestock cannot be found or if found and he refuses to pay the amount of damages and costs or to furnish a bond, the statute authorizes a sale of the livestock by the sheriff or constable at public auction and the proceeds applied first for damages and costs and the excess paid to the owner of the livestock if known.

The complaint alleges that the defendant Tobacco Root Co-operative State Grazing District impounded 30 head of horses and mules belonging to plaintiffs and intends to cause defendant Brook, as sheriff of Madison county, to sell them pursuant to the above statute at public auction in foreclosure of an alleged lien claimed by the grazing district. It is contended by plaintiff that the statute is unconstitutional because it requires no adjudication to establish the alleged lien sought to be foreclosed and hence is a denial of due process under both the state and federal constitutions. Const. Mont. art. 3, sec. 27; Const. U. S. Amend. 14.

It is well settled that notice and opportunity to be heard are █ essential elements of due process. Chicago M. & St. Paul Ry. Co. v. Board of R. R. Com'rs, 76 Mont. 305, 247 Pac. 162; Mitchell v. Bank Corporation of Montana, 94 Mont. 183, 22 Pac. (2d) 155; Johnson v. Johnson, 92 Mont. 512, 15 Pac. (2d) 842; Application of O'Sullivan, 117 Mont. 295, 158 Pac. (2d) 306, 161 A. L. R. 487; State ex rel. Ryan v. Norby, Mont., 165 Pac. (2d) 302.

Plaintiff contends that section 26 denies due process of law to: first, those livestock owners who do not respond to the notice sent them by the district; second, those owners who cannot be found or the ownership of whose livestock cannot be discovered; and third, those owners who refuse to pay the amount of the damages or charges claimed or to furnish bond therefor.

As to the second class above referred to it is sufficient to say ██ that these plaintiffs cannot raise the question of the validity of the statute as to those because they do not fall in that class. Bonnett v. Brown, 155 Miss. 833, 125 So. 427. It is well settled that only those adversely affected by the operation

of a statute will be heard to question its validity. State ex rel. Brooks v. Cook, 84 Mont. 478, 276 Pac. 958; Rider v. Cooney, 94 Mont. 295, 23 Pac. (2d) 261; State v. Andre, 101 Mont. 366, 54 Pac. (2d) 566; State ex rel. Riley v. District Court, 103 Mont. 576, 64 Pac. 115.

Is the statute valid as to those in class one and class three above referred to? In considering this question we must analyze the statute and ascertain the purpose of the legislation. Under the statute the district has a lien on the livestock taken into possession and may retain possession thereof as security for the damages and charges for their care.

The purpose of the bond is that it may stand as security for the damages and costs in lieu of the livestock seized. By providing for the giving of a bond a method is provided whereby the owner of the livestock may regain possession thereof and thus stop the further expense of providing for their care by the district during the time necessary for an adjudication of the amount of damages and costs. The statute provides a maximum sum of 50¢ per animal unit per day as damages and charges. It also gives the owner the right to pay under protest the amount of damages and costs demanded and sue to recover the excess if the owner considers the demand excessive.

Our attention has not been called to any case treating of a statute exactly like ours. The following cases, however, and perhaps others, have condemned statutes permitting the sale of trespassing animals to recover damages or penalty incurred without prior judicial determination thereof. Greer v. Downey, 8 Ariz. 164, 71 Pac. 900, 61 L. R. A. 408; Poppen v. Holmes, 44 Ill. 360, 92 Am. Dec. 186; Varden v. Mount. 78 Ky. 86, 39 Am. Rep. 208; Donovan v. Mayor of Vicksburg, 29 Miss. 247, 64 Am. Dec. 143; Rockwell v. Nearing, 35 N. Y. 302; Armstrong v. Traylor, 87 Tex. 598, 30 S. W. 440; Bullock v. Geomble, 45 Ill. 218.

The following cases have upheld statutes somewhat similar to that involved here so far as they treat of the point which we are considering. Fall Creek Sheep Co. v. Walton, 24 Idaho 760, 136

Pac. 438, Ann. Cas. 1915C, 1252; McCrory v. Fisher, Mo. App., 108 S. W. (2d) 413; Howell v. Daughet, 148 Ark. 450, 230 S. W. 559, 18 A. L. R. 63; and see the note in 6 A. L. R. 230. That the courts are not in harmony on the question is pointed out in 16 C. J. S., Constitutional Law, sec. 706, page 1487.

In our opinion the better reasoned cases support the view stated in 2 Am. Jur. 800 as follows: "Where a statute or ordinance provides that the owner of cattle shall, in addition to the cost of taking them up, impounding, and keeping them, pay for the damages they may do to private individuals while unlawfully running at large, the question of damages and the amount thereof can be determined only by judicial investigation, and generally by a suit between the parties interested."

Our statute, as above noted, provides for the giving of a bond to prevent sale of the livestock. Defendant contends that because of this feature of the statute the owner of livestock is afforded means of having a judicial determination of the amount of the damages and that therefore he is not denied due process of law.

It has been held that it is competent for the legislature to require a non-resident to give a bond before being permitted to defend in a foreign attachment action and that the result was not changed by the circumstance that the defendant was unable to furnish the bond. Ownbey v. John Pierpont Morgan, 256 U. S. 94, 41 S. Ct. 433, 65 L. Ed. 837. Plaintiffs rely upon the case of White v. Ward, 157 Ala. 345, 47 So. 166, 169, 18 L. R. A., N. S., 568, which involved a statute dealing with summary actions against attorneys for moneys received for their client and requiring the money to be paid into court to avoid a penalty.

It was contended that the attorney must deposit the money when demanded as a condition to his right to defend in the action. The court first held that the statute was not open to that interpretation and then said, "In the next place, such a requirement would be unconstitutional, as not being due process. A right of defense is the same, so far as protection by law is concerned, as if tangible property in possession was involved; and

no law can constitutionally require a party to yield possession and claim of property, even to the court, on any mere demand, as a condition of being allowed to defend on the merits against the claim.'' It should be noted that in that case there was no lien involved, dependent upon possession such as we have here. Also, our statute does not deprive the owner of the livestock of the right to defend against the claim of the lien of the district.

In Greig v. Ware, 25 Colo. 184, 55 Pac. 163, relied upon by plaintiffs there was involved the right of the court to strike plaintiff's pleadings from the files in a replevin action because of his failure to file a second bond after the first one was declared insufficient. The court simply held that the failure to file a sufficient bond deprived plaintiff of the right to possession of the property involved but did not deprive him of the right to proceed with his action.

It seems to us that the provision for the furnishing of a bond ▮ ''conditioned for the payment to the state district of all sums, including costs that may be recovered by said state district in a civil action to foreclose its lien,'' saves to the property owner the right of due process of law.

Plaintiffs contend that since the statute makes no provision as to who shall determine the sufficiency of the bond, it must of necessity be left to the district and that in consequence it is left to the arbitrary discretion of the district whereas it is properly a judicial function.

There is in this case no showing of an abuse of discretion on ▮ the part of the district in the matter of approving a bond. So far as this case is concerned it does not appear whether any bond was tendered. It is our view that no one can question this phase of the statute except one who has been adversely affected by its operation. It is entirely possible that the district might be more lenient in approving a bond than a court and, if so, there would be no basis for condemning the statute on this account. as against one who was thus treated.

The claim of plaintiffs that the statute does not afford due process of law in the matter of asserting the amount of damages

and costs due as well as in ascertaining whether the statute applies to a given case cannot be sustained. All these issues can be determined judicially by depositing a bond as security in lieu of the livestock taken.

The next attack made on the Grass Conservation Act is that it violates the equal protection clause of the Federal Constitution. Amend. 14. Specifically it is contended that the Act denies to plaintiffs the equal protection of the laws in that, first, it unreasonably discriminates against small owners and in favor of large operators in the matter of determining whether a grazing district shall or shall not be created; secondly, that it denies equal protection of the laws to those operators owning or controlling property within the boundaries of the district but who do not become members of the district; thirdly, to operators who own or control property located outside the boundaries of the district; and fourthly, that it denies the equal protection of the laws and is unreasonably discriminatory so far as it provides for the cost of constructing and maintaining fences.

The privilege of grazing livestock on property not belonging ▮ to the owner of the cattle is not a vested property right but a revocable license. Mendiola v. Graham, 139 Ore. 592, 10 Pac. (2d) 911.

The legislature may provide for grazing districts applicable ▮ to the entire state or only to certain designated counties or portions if there be a reasonable ground for such classification and if its action is not arbitrary or capricious. Tucker v. Mullendore, 180 Okl. 180, 69 Pac. (2d) 35; Johnson v. Pinkley, 141 Ark. 612, 217 S. W. 805; Street v. Hooten, 131 Ala. 492, 32 So. 580; State v. Mathis, 149 N. C. 546, 63 S. E. 99. Nor is any constitutional right invaded by the circumstance that those who are non-members and who hold no grazing permits must fence their cattle out of the district. George v. Board of Revenue, 207 Ala. 227, 92 So. 269.

It is important to note moreover that if membership in the ▮ district confers special privileges or immunities over nonmembers still no constitutional right is invaded here since small

owners such as plaintiffs are privileged to become members of the district. This is by virtue of section 14, Chapter 208, Laws of 1939, reading in part as follows: "Membership in the district is limited to persons, partnerships, corporations and associations engaged in the livestock business who own or lease forage producing lands within or near the district except that the agent of any person, association, partnership or corporation *entitled* to membership in the district may become a member in place of his principal." (Emphasis supplied.) Likewise, even non-members who have lands within the district have ample opportunity to protect themselves and their rights. Section 27 of the Act provides: "When any land is situated within the boundaries of a state district and is not leased or controlled by said district and not surrounded by a legal fence, *any person owning or controlling such lands shall have the right to obtain a grazing permit* from the state district, the size of which shall be determined by the carrying capacity of such land, full consideration being given for location of necessary stock water. The use of such permit shall be subject to all regulations by the state district." (Emphasis supplied.)

It should be pointed out also that the Act does not treat non-members differently from members under like circumstances. In other words if a member has lands outside the district he must fence it off in like manner as a non-member. Likewise, a member of the district grazing more cattle than his permit calls for is subject to the same penalties as a non-member permitting his cattle to trespass on the district. The member has the same burden as the non-member to fence in his cattle over and above those covered by his grazing permit. Non-members owning land near the district are not burdened with any greater duty now than before the passage of the laws in question for it has been the law for years that they must by lawful fence, "fence out" the livestock of others. Dunbar v. Emigh, 117 Mont. 287, 158 Pac. (2d) 311. The fact that the grazing district is exempted from building or paying for any part of partition

fences, we think was a matter falling within legislative discretion.

Reasonable regulation of the grazing of livestock is proper ▮▮▮ under the police power of the state. 3 C. J. S., Animals, secs. 108, 123, pages 1210, 1227; State v. Finney, 65 Idaho 630, 150 Pac. (2d) 130.

Section 1 of Chapter 208 specifies that the purpose of the Act is to "provide for the conservation, protection, restoration, and proper utilization of grass, forage and range resources." Protection against overgrazing is provided for in subdivision 4 of section 12. These purposes would of course fail without the right of preventing trespassing livestock and we cannot say that the legislature acted arbitrarily and without reason in exempting the grazing district from the duty of fencing. In reaching this conclusion we keep in mind that usually much of the land in the district is owned by the federal government and is not in private ownership.

The case of Teuton v. Thomas, 100 Fla. 78, 129 So. 330, relied upon by plaintiffs is distinguishable in that the statute in that case was confined to a single county of the state whereas here the law is applicable to the entire state and grazing districts may be created in any and all counties in the state under the same circumstances.

It is contended that the Act in question is a local or special law "authorizing the creation, extension or impairment of liens" contrary to section 26, art. V, of the Montana Constitution.

In the note in 6 A. L. R. page 222, the author states: "Statutes relating to fencing or stock districts have generally been held not to conflict with Constitutional provisions against local, special, or discriminatory laws." Many cases are there cited in support of the rule but the author states that: "In some cases, however, a contrary conclusion is reached."

The clear weight of authority holds that such statutes do not ▮▮▮ conflict with constitutional provisions against local or special laws particularly where as here the statute applies to the

whole state and to all alike who desire to take advantage of the law.

The next and last point urged is that the Act operates as a delegation of powers to create grazing districts to the three or more persons who desire to take advantage of the Act. Here again we find the general rule stated in the note in 6 A. L. R., page 218 as follows: "It is, however, generally held that, where the statute is complete in itself, there is no unconstitutional delegation of power in making its operation dependent upon the vote or petition of the electors or freeholders of the district, or upon the determination by a local court of the existence of the conditions prescribed in the statute." Again in 70 A. L. R., 1064, it is said:

"The case of Davis v. State, 1904, 141 Ala. 84, 37 So. 454, 109 Am. St. Rep. 19, was an indictment for letting a hog run at large in a stock-law district. There the court said: 'The indictment was demurred to on many grounds, the first of which was that it was based on an unconstitutional law. This contention proceeds on the alleged ground, as stated in the brief of counsel, that the act "does not define either the boundaries within which the stock law is to be operated, or the persons who are to determine by their votes whether or not the law shall go into effect, but attempts to delegate to any ten or more freeholders who may see fit to write in a petition, the power to determine the boundaries of the proposed stock district, and the voters who shall participate in the election." The first section of the act provides: "That whenever ten freeholders or householders in any beat or part of beat in Etawah county shall petition the probate judge of said county, asking that an election be held in said beat or part of said beat to decide whether, in said beat or part of said beat, stock shall be prohibited from running at large, the probate judge shall order an election in such beat or part of beat described in said petition and at a place to be designated in said petition, and shall notify the public that an election will be held at said voting, not less than twenty nor more than thirty days from the publication, specifying the day

458

of the election, to decide whether, in said beat or part of the
beat described in said petition, stock shall be prohibited from
running at large,'' etc. The criticism of the act is not well made.
The act does provide, not that ''ten freeholders or householders
shall have the power to determine the boundaries of the pro-
posed stock district'', but it simply bestows on them the right
to petition for an election to be held in the beat or part thereof
designated in the petition, at which the qualified voters of the
beat or part of the beat designated shall be allowed to vote. So,
the petitioners have no right to determine the boundaries of the
district, since the qualified voters may approve or defeat the
recommendation of the petitioners, and they are the ones who,
at last, determine the boundaries of the district. If competent
for the legislature to authorize, in this manner, the establish-
ment of a stock district, it was just as competent for it to author-
ize a part of the beat to do so. The legislature, in this act, did
authorize the establishment of such districts, dependent upon
the condition of the people voting to have them, and when the
condition named had been fulfilled, and the district is thereby
established, it cannot be said that there was not legislative
authority behind it. The act does not delegate legislative powers,
but it is legislation, to take effect upon a valid condition.' ''

Section 9 of the Act permits three or more persons to initiate
proceedings for the creation of a district. A hearing is had on
the matter and it is created only if it appears ''feasible, beneficial
and desirable to the majority of those who own or control more
than fifty per cent of the lands to be included in such district.''
The discretion to create the district rests in the Commission.

The applicable rule is stated in Chicago M. & St. P. Ry. Co. v.
Board of R. R. Com'rs, 76 Mont. 305, 247 Pac. 162, 164, wherein
this court said: ''We think the correct rule as deduced from
the better authorities is that if an act but authorizes the ad-
ministrative officer or board to carry out the definitely ex-
pressed will of the legislature, although procedural directions
and the things to be done are specified only in general terms,
it is not vulnerable to the criticism that it carries a delegation

of legislative power. But the power must not be so arbitrary in character as to transgress the 'due process clause' of the state or national Constitution."

The fact that the standards to guide the administrative agency are in broad and general terms does not affect the validity of the Act. 42 Am. Jur., p. 346; and see, State ex rel. Missoula v. Holmes, 100 Mont. 256, 47 Pac. (2d) 624, 100 A. L. R. 581.

" 'The authority of the legislature to delegate to the administrative boards and agencies of the state the power and authority of ascertaining and determining the facts upon which the laws are to be applied and enforced cannot be seriously disputed.' " Quoted in Rutherford v. City of Great Falls, 107 Mont. 512, 86 Pac. (2d) 656, from State v. Guidry, 142 La. 422, 76 So. 843; and see, State ex rel. Stewart v. District Ct., 103 Mont. 487, 63 Pac. (2d) 141.

Finding the acts in question valid the judgment of the district court is reversed and the cause remanded with directions to sustain the demurrer to the complaint.

Mr. Chief Justice Adair and Associate Justices Choate, Gibson and Metcalf concur.

Rehearing denied June 5, 1948.