## SANDS v. MANISTEE RIVER IMPROVEMENT COMPANY.

ERROR TO THE SUPREME COURT OF THE STATE OF MICHIGAN.

Argued October 31, 1887. — Decided November 14, 1887.

The exaction of tolls, under a state statute, for the use of an improved natural waterway is not within the prohibition of the Constitution of the United States that no State shall deprive a person of his property without due process of law.

The internal commerce of a State, that is, the commerce which is wholly

confined within its limits, is as much under its control as foreign or inter-
state commerce is under the control of the national government; and to
encourage the growth of this commerce and render it safe, States may
provide for the removal of obstructions from their rivers and harbors, and
deepen their channels, and improve them in other ways, and levy a gen-
eral tax or toll upon those who use the improvement 'to meet their cost;
provided the free navigation of the waters, as permitted under and by
the laws of the United States, is not impaired, and provided any system
for the improvement of their navigation, provided by the general govern-
ment, is not defeated.

There was no contract in the fourth article of the Ordinance of 1787 respect-
ing the freedom of the navigable waters of the territory northwest of the
Ohio River emptying into the St. Lawrence, which bound the people of
the territory, or any portion of it, when subsequently formed into a State
and admitted into the Union; but from the very conditions on which the
States formed out of that territory were admitted into the Union, the
provisions of the Ordinance became inoperative, except as adopted by
them.

*Huse* v. *Glover,* 119 U. S. 543, affirmed.

THE plaintiff below was a corporation organized under a
statute of Michigan for the improvement of Manistee River,
a stream wholly within that State. The present action was
brought to collect from the defendant the amount of tolls
levied for the use, in the years 1878, 1879, 1880, and 1881, of
the river as improved. The improvements consisted in the
removal of obstacles to the floating of logs and lumber down
the stream, principally by cutting new channels at different
points, and by confining the waters at other points by em-
bankments. The statute, under which the plaintiff below was
organized, contained various provisions to secure a careful con-
sideration of the improvements proposed, of their alleged
benefit to the public, and, if adopted, of their proper con-
struction, and of the tolls to be charged for their use. The
company must first obtain the assent of the Governor and
of the Attorney General to the proposed improvements, and
then submit to the Board of Control designated a map of the
sections of the stream which it proposed to improve, and plans
showing the nature and character of the improvements. If, in
the opinion of the Board, the construction of the proposed
improvements would be a public benefit, and the company
was a proper one to make them, the Board was required to

endorse its approval upon the map and plans, give the consent of the State to their construction, and fix the time for their completion. Upon such approval, the corporation was authorized to make the improvements; and, whenever they had been completed to the satisfaction of the Board of Control, and accepted, that body was to fix the rates of toll which th company might charge for running vessels, boats, rafts, timber, logs, or lumber through the improved stream. These rates were to be graduated with reference to the distance run upon the river, and were not to be increased or changed without the consent of the Board, and could not be increased at any time, so that they would amount to more than fifteen per cent of the cost of the improvements after deducting necessary expenses and repairs. The collection of tolls was to be confined strictly to that part of the river improved, and to the floatable material benefited by the improvements. The streams improved under the statute were to be opened to all persons for the passage of vessels, boats, logs, rafts, timber, and lumber, upon payment of the prescribed tolls; and uniform rates were to be charged.

The declaration alleged a compliance by the plaintiff below with the requirements of the statute in its incorporation; in obtaining the consent of the Governor and of the Attorney General of the State to its proposed improvement of Manistee River; in submitting to the Board of Control the maps and plans of the improvements; in obtaining its opinion that their construction, as thus shown, would be a public benefit; that the plaintiff was a proper company to make the improvements; and, also, its consent to the same on behalf of the State, and its designation of the time within which they were to be constructed. The declaration also set forth that the improvements were made pursuant to the plans and within the time required, with such changes and exceptions as were authorized by the Board under the statute, and that when they were completed and accepted, that body fixed the rates of toll for the use of the river as improved, in running logs and timber for the years 1879 to 1881, inclusive, those rates varying from five to fifteen cents per thousand feet, board

measure, according to the distance that the logs were to run through different sections of the improved stream; that during the years mentioned, the defendant below floated down the river, through the portions improved, seventy-eight million seven hundred and eleven thousand feet of logs, board measure, and became liable for the tolls fixed upon them, amounting to $9253, to recover which the present action was brought.

The defendant pleaded the general issue, and gave notice of several special defences. On the trial, the plaintiff established the matters alleged by him in the declaration, but the evidence offered by the defendant only tended to show that the measurement of the logs was excessive, and that the tolls receivable were less by ten per cent than the amount claimed.

The defendant, however, contended, and requested the court to instruct the jury in substance as follows :

First. That the statute of the State, under which the plaintiff was organized and the tolls were fixed, was in conflict with the clause of the Fourteenth Amendment to the Constitution of the United States, which declares that no State shall deprive any person of life, liberty, or property without due process of law, in authorizing the Board of Control to fix the rates of toll without notice to the parties interested, or affording them any opportunity of contesting the validity or propriety of such tolls, either in the first instance or afterwards.

Second. That the statute in authorizing the improvements of rivers and the collection of tolls for them was in conflict with the clause of the Constitution of the United States which declares that no State shall pass any law impairing the obligation of contracts, in that it impairs the contract contained in the Ordinance of 1787, "for the government of the territory of the United States northwest of the river Ohio," giving to the people of that territory the right to the free use of the navigable waters leading into the St. Lawrence, without any tax, impost, or duty therefor. The fourth article of that ordinance declares that, "The navigable waters leading into the Mississippi and Saint Lawrence, and the carrying places between the same, shall be common highways and forever free,

as well to the inhabitants of the said territory as to the citizens of the United States, and those of any other States that may be admitted into the confederacy, without any tax, impost, or duty therefor." But the court refused to give these instructions or either of them; and the defendant excepted. The jury found a verdict for the plaintiff for $8731.88; upon which judgment was entered. On appeal, the judgment was affirmed by the Supreme Court of the State, 53 Mich. 593; and the case was brought here on writ of error.

*Mr. M. J. Smiley* for plaintiff in error cited: *Sands* v. *Manistee River Improvement Co.*, 53 Mich. 593; *Benjamin* v. *Manistee River Improvement Co.*, 42 Mich. 628; *Manistee River Improvement Co.* v. *Lamport*, 49 Mich. 442; *Moor* v. *Veazie*, 32 Maine, 343; *S. C.* 52 Am. Dec. 655; *Lorman* v. *Benson*, 8 Mich. 18; *S. C.* 77 Am. Dec. 435; *Morgan* v. *King*, 35 N. Y. 454; *S. C.* 91 Am. Dec. 58; *Thunder Bay Booming Co.* v. *Speechly*, 31 Mich. 336; *La Plaisance Bay Harbor Co.* v. *Monroe*, Walker Ch. (Mich.) 155; *Moore* v. *Sanborne*, 2 Mich. 519; *S. C.* 59 Am. Dec. 209; *San Mateo County* v. *Southern Pacific Railroad*, 13 Fed. Rep. 722; *Burns* v. *Multomah Railroad*, 15 Fed. Rep. 177; *Santa Clara County* v. *Southern Pacific Railroad*, 18 Fed. Rep. 385; *Stuart* v. *Palmer*, 74 N. Y. 183; *Lavin* v. *Industrial Savings Bank*, 18 Blatchford, 1; *Ames* v. *Port Huron Log Co.*, 11 Mich. 139; *S. C.* 83 Am. Dec. 731; *Munn* v. *Illinois*, 94 U. S. 113; *Chicago, &c., Railroad* v. *Iowa*, 94 U. S. 155; *Railroad Commission Cases*, 116 U. S. 307, 331; *People* v. *Brooklyn*, 4. N. Y. 419; *S. C.* 55 Am. Dec. 266; *Transportation Co.* v. *Parkersburg*, 107 U. S. 691; *Ouachita Packet Co.* v. *Aiken*, 121 U. S. 444; *Nelson* v. *Cheboygan Navigation Co.*, 44 Mich. 7; *Stoeckle* v. *Ellees*, 37 Mich. 261.

*Mr. T. J. Ramsdell* for defendant in error cited: *Escanaba* v. *Chicago*, 107 U. S. 678; *Huse* v. *Glover*, 15 Fed. Rep. 292; *S. C.* on appeal, 119 U. S. 543; *Woodman* v. *Kilbourne Mfg. Co.*, 1 Bissell, 549; *Kelly* v. *Pittsburg*, 104 U. S. 78; *Pollard* v. *Hagan*, 3 How. 212; *Withers* v. *Buckley*, 20 How. 84;

*Willson* v. *Blackbird Creek Marsh Co.*, 2 Pet. 245; *Gilman* v. *Philadelphia*, 3 Wall. 713; *Pound* v. *Turk*, 95 U. S. 459, 462; *Mobile* v. *Kimball*, 102 U. S. 691; *Benjamin* v. *Manistee River Improvement Co.*, 42 Mich. 628; *Nelson* v. *Cheboygan Slack Water Navigation Co.*, 44 Mich. 7, 10; *Manistee River Improvement Co.* v. *Lamport*, 49 Mich. 442; *Wisconsin River Improvement Co.* v. *Manson*, 43 Wis. 255; *Spooner* v. *McConnell*, 1 McLean, 337, 352; *Palmer* v. *Cuyahoga County*, 3 McLean, 226; *Kellogg* v. *Union Co.*, 12 Conn. 7; *Thames Bank* v. *Lovel*, 18 Conn. 500; *S. C.* 46 Am. Dec. 332; *Commissioners of Sinking Fund* v. *Green and Barren River Navigation Co.*, 89 Ky. 73; *McReynolds* v. *Smallhouse*, 8 Bush, 447; *Carondelet Canal Navigation Co.* v. *Parker*, 29 La. Ann. 430; *Packet Co.* v. *Keokuk*, 95 U. S. 80; *Packet Co.* v. *St. Louis*, 100 U. S. 423; *Vicksburg* v. *Tobin*, 100 U. S. 430; *Packet Co.* v. *Catlettsburg*, 105 U. S. 559; *Transportation Co.* v. *Parkersburg*, 107 U. S. 691; *San Mateo County* v. *Southern Pacific Railroad*, 13 Fed. Rep. 722; *Santa Clara County* v. *Southern Pacific Railroad*, 18 Fed. Rep. 385; *Sears* v. *Cottrell*, 5 Mich. 251; *Weimer* v. *Bunbury*, 30 Mich. 201; *Munn* v. *Illinois*, 94 U. S. 113; *Peik* v. *Chicago, &c., Railroad*, 94 U. S. 164; *Hagar* v. *Reclamation District*, 111 U. S. 701, 707–712; *Davidson* v. *New Orleans*, 96 U. S. 97; *McMillen* v. *Anderson*, 95 U. S. 37.

Mr. Justice Field, after stating the case, delivered the opinion of the court.

The plaintiff in error, the defendant below, misapprehends the purport of the provision that no State shall deprive one of property without due process of law, when he considers the exaction of tolls under a statute for the use of an improved waterway as a deprivation of property within its meaning. There is no taking of property from him by such exaction within the prohibition, any more than there is a taking of property from a traveller, in requiring him to pay for his lodgings in a public inn. There is in such a transaction only an exchange of money for its supposed equivalent. The tolls exacted from the defendant are merely compensation for bene-

fits conferred, by which the floating of his logs down the stream was facilitated.

There is no analogy between the imposition of taxes and the levying of tolls for improvement of highways; and any attempt to justify or condemn proceedings in the one case, by reference to those in the other, must be misleading. Taxes are levied for the support of government, and their amount is regulated by its necessities. Tolls are the compensation for the use of another's property, or of improvements made by him; and their amount is determined by the cost of the property, or of the improvements, and considerations of the return which such values or expenditures should yield. The legislature, acting upon information received, may prescribe, at once, the tolls to be charged; but, ordinarily, it leaves their amount to be fixed by officers or boards appointed for that purpose, who may previously inspect the works, and ascertain the probable amount of business which will be transacted by means of them, and thus be more likely to adjust wisely the rates of toll in conformity with that business. This subject, like a multitude of other matters, can be better regulated by them than by the legislature. In the administration of government, matters of detail are usually placed under the direction of officials. The execution of general directions of the law is left, in a great degree, to their judgment and fidelity. Any other course would be attended with infinite embarrassment.

In authorizing the Board of Control to fix rates of toll for the floating of logs and timber over the improved portions of the Manistee River certain limits are prescribed to its action; but within those limits the matter is left to its judgment. No notice can be given to parties, who may have occasion to use the stream, to attend before the Board and present their views upon the tolls to be charged. Such parties cannot be known in advance. The occasion for using the improved stream may arise at any time in the year; perhaps after the tolls have been established. The whole subject is one of administrative regulation, in which a certain amount of discretionary authority is necessarily confided to officers entrusted with its execution. Should there be any gross injustice in the rate of

tolls fixed, it would not, in our system of government, remain long uncorrected.

The Manistee River is wholly within the limits of Michigan. The State, therefore, can authorize any improvement which in its judgment will enhance its value as a means of transportation from one part of the State to another. The internal commerce of a State — that is, the commerce which is wholly confined within its limits — is as much under its control as foreign or interstate commerce is under the control of the general government; and, to encourage the growth of this commerce and render it safe, the States may provide for the removal of obstructions from their rivers and harbors, and deepen their channels, and improve them in other ways, if, as is said in *County of Mobile* v. *Kimball*, the free navigation of those waters, as permitted under the laws of the United States, is not impaired, or any system for the improvement of their navigation provided by the general government is not defeated. 102 U. S. 691, 699. And to meet the cost of such improvements, the States may levy a general tax or lay a toll upon all who use the rivers and harbors as improved. The improvements are, in that respect, like wharves and docks constructed to facilitate commerce in loading and unloading vessels. *Huse* v. *Glover*, 119 U. S. 543, 548. Regulations of tolls or charges in such cases are mere matters of administration, under the entire control of the State.

There was no contract in the fourth article of the Ordinance of 1787 respecting the freedom of the navigable waters of the territory northwest of the Ohio River emptying into the St. Lawrence, which bound the people of the territory, or of any portion of it, when subsequently formed into a State and admitted into the Union.

The Ordinance of 1787 was passed a year and some months before the Constitution of the United States went into operation. Its framers, and the Congress of the confederation which passed it, evidently considered that the principles and declaration of rights and privileges expressed in its articles would always be of binding obligation upon the people of the territory. The ordinance in terms ordains and declares that

its articles "shall be considered as articles of compact between the original States and the people and States in the said territory, and forever remain unalterable unless by common consent." And for many years after the adoption of the Constitution, its provisions were treated by various acts of Congress as in force, except as modified by such acts. In some of the acts organizing portions of the territory under separate territorial governments, it is declared that the rights and privileges granted by the ordinance are secured to the inhabitants of those territories. Yet from the very conditions on which the States formed out of that territory were admitted into the Union, the provisions of the ordinance became inoperative except as adopted by them. All the States thus formed were, in the language of the resolutions or acts of Congress, "admitted into the Union on an equal footing with the original States *in all respects whatever.*" Michigan, on her admission, became, therefore, entitled to and possessed of all the rights of sovereignty and dominion which belonged to the original States, and could at any time afterwards exercise full control over its navigable waters except as restrained by the Constitution of the United States and laws of Congress passed in pursuance thereof. *Permoli* v. *First Municipality of New Orleans,* 3 How. 589, 600; *Pollard* v. *Hagan,* 3 How. 212; *Escanaba Co.* v. *Chicago,* 107 U. S. 678, 688; *Van Brocklin* v. *Tennessee,* 117 U. S. 151, 159; *Huse* v. *Glover,* 119 U. S. 543, 546.

But, independently of these considerations, there is nothing in the language of the fourth article of the ordinance respecting the navigable waters of the territory emptying into the St. Lawrence which, if binding upon the State, would prevent it from authorizing the improvements made in the navigation of the Manistee River. As we said in *Huse* v. *Glover,* 119 U. S. 543, decided at the last term: "The provision of the clause, that the navigable streams shall be highways without any tax, impost, or duty, has reference to their navigation in their natural state. It did not contemplate that such navigation might not be improved by artificial means, by the removal of obstructions, or by the making of dams for deepening the waters, or by turning into the rivers waters from other streams to increase

their depth. For outlays caused by such works the State may exact reasonable tolls." 119 U. S. 548. And again : " By the terms tax, impost, and duty, mentioned in the ordinance, is meant a charge for the use of the government, not compensation for improvements." *Ibid.* 549.

We perceive no error in the record, and

*The judgment of the Supreme Court of Michigan must be affirmed ; and it is so ordered.*

---

RUGGLES *v.* MANISTEE RIVER IMPROVEMENT CO. Error to the Supreme Court of the State of Michigan. MR. JUSTICE FIELD : The same questions are presented as in *Sands* v. *The Manistee River Improvement Co. ;* and, in conformity with the decision there rendered, the judgment herein is

*Affirmed.*

*Mr. M. J. Smiley* for plaintiff in error.

*Mr. T. J. Ramsdell* for defendant in error.