STATE ex Rel. RILEY, Relator, *v.* DISTRICT COURT
ET AL., RESPONDENTS.

(No. 7,658.)

(Submitted December 23, 1936.   Decided January 2, 1937.)

[64 Pac. (2d) 115.]

578

*Mr. P. E. Geagan, Mr. G. W. Howard* and *Mr. Timothy Nolan,* for Relator, submitted a brief; *Mr. Geagan* and *Mr. Howard* argued the cause orally.

*Messrs. McCaffery & McCaffery,* for Respondents, submitted a brief and argued the cause orally.

Opinion: PER CURIAM.

This is an original application for a writ of review directed to the district court of Silver Bow county, by which it is sought to have various orders made in a proceeding brought under the provisions of Chapter 27, Laws 1935, now sections 828.1 et seq., Revised Codes, annulled.

At the general election held on November 3, 1936, Jeremiah J. Lynch, T. E. Downey, Frank L. Riley and Henry A. Tyvand were candidates for the office of judge of the district court of the second judicial district comprising Silver Bow county, two of whom were to be elected. As a result of the determination of the board of county canvassers, T. E. Downey and Frank L. Riley were declared elected. Thereafter Jeremiah J. Lynch, one of the unsuccessful candidates, filed a petition under the provisions of Chapter 27, supra, seeking to secure a recount of the votes for himself and Frank L. Riley in certain precincts. Both Downey and Riley were the incumbent judges and made no orders whatever in the proceeding thus initiated. Thereupon the Governor directed the Honorable Frank P. Leiper, Judge of the seventh judicial district, to hear the petition, and he assumed jurisdiction and proceeded with the hearing. On November 27, 1936, upon the appearance of Judge Leiper to hold court, Frank L. Riley filed written objections to the court's proceeding with

the hearing on the ground that he had received no notice of the hearing of the petition, nor of the time and place fixed for its hearing. On the same day notice of the time and place of hearing was served upon Riley, and upon the case being called for hearing pursuant to notice on the following day, objection was again interposed on the ground that he had not received five days' notice. A motion and demand for a bond was filed by Riley, and both the objection and this motion were denied. A motion was filed on behalf of Riley for continuance of the cause, and this was also denied. A demurrer to the petition was filed and overruled and thereupon on the same day Riley filed a separate answer to the petition. Thereafter evidence was introduced, and on December 2, 1936, the court made an order addressed to the board of county canvassers, directing the board to reassemble on December 4, 1936, to canvass the judicial ballots in each of the precincts designated in the order, forty in number. On December 5 the board of canvassers organized as required by the order and commenced to recount the judicial ballots as the same related to candidates Jeremiah J. Lynch and Frank L. Riley.

During this recount, and while the board of canvassers was so engaged, the respondent judge directed the issuance of an order and citation to the three members of the board to show cause why they should not be punished for contempt. They appeared in response to the citation and were heard separately under oath on the same day, and as to two members the proceeding was dismissed. As to the third member the court ordered the board to proceed with the recount but the proceedings for contempt against such member were continued from time to time until the completion of the recount and the board's final report and return to the court on December 15, at which time the proceeding against this member was also dismissed.

On December 12, 1936, the board made a partial report to the court, and on December 14 the presiding judge, over the objection of the relator, advised the board regarding matters of law in relation to the ballots that should and should

not be counted. All the proceedings had by the court and rulings made by it were over the objections of counsel for relator.

Thereupon relator filed application seeking a review of these proceedings. It is argued that in many respects the trial judge acted in excess of and without jurisdiction. The first contention of relator is that Chapter 27, supra, is without application to candidates seeking the office of district judge and other state officers, and further that, if the body of the Act itself may be so construed as to apply to candidates for the office of district judge, then, by reason of deficiencies in its title, the Act as applied to such candidates is unconstitutional as being in violation of section 23, Article V, of the state Constitution.

The pertinent provisions of the Act, so far as section 1 (Rev. Codes, sec. 828.1) is concerned, are as follows: "Any unsuccessful candidate for any public office at any general or special election, or at any municipal election, may within five days after the canvass of the election returns by the board or body charged by law with the duty of canvassing such election returns, apply to the district court of the county in which said election is held * * * for an order directed to such board to make a recount of the votes cast at such election, in any or all of the election precincts wherein the election was held. * * * Within five days after the filing of said application in the office of the clerk of said district court, the said court * * * shall hear and consider said application, and determine the sufficiency thereof; and * * * the court * * * shall make an order addressed to the said board of county canvassers, requiring them * * * to reassemble and reconvene as a canvassing board, and to recount the ballots cast at said election precinct or precincts of which complaint is made."

The title of the Act reads as follows: "An Act Providing for the Recount of the Votes Cast at Any General or Special Election, or at Any Municipal Election, by the Board of County Canvassers Pursuant to an Order Therefor, Upon

Application Made to the District Court, or to a Judge Thereof, by Any Person Who by the Statement of the Result of the Canvass of the Election Returns by the Board of County Canvassers Is Found Not to Have Received the Highest Number of Votes for the Office for Which Said Person Was a Candidate at Such Election; and Providing for the Correction of the Official Canvass by the Said Board of County Canvassers to Conform to Such Recount; and for the Cancellation of the Certificate of Election Issued by the County Clerk if it Should be Found by Such Recount That the Person to Whom the Certificate Had Theretofore Been Issued Did Not Receive the Highest Number of Votes for Said Office; and for the Issuance of a Certificate of Election to the Successful Candidate as Disclosed by Said Recount; and Repealing and Amending All Acts or Parts of Acts, or Section of the Statute in Conflict Herewith.''

Section 6 of the Act (Rev. Codes, sec. 828.6) provides that if a certificate of election has been issued pursuant to the provisions of section 797, Revised Codes, to the person who did not in fact receive the highest number of votes cast at the election, then the certificate of election shall be void and a new certificate issued by the clerk pursuant to the findings and determination of the recount. Section 797 provides that the county clerk, after the completion of the canvass by the county canvassing board, shall make out and deliver to the person receiving the highest vote a certificate of election, signed by him and authenticated by the proper seal, except as to the person elected district judge. Thus it will be observed that the county clerk does not issue a certificate to a district judge, and the provisions of section 6 of the Act are wholly without application.

The election returns for the candidates for the office of district judge are compiled in the form of a certified abstract of the results of the board of county canvassers (sec. 801, Rev. Codes), which are transmitted to the Secretary of State (sec. 802, Id.), canvassed by the state board of canvassers which makes out and files in the office of the Secretary of

State a statement thereof and transmits a copy of such statement to the Governor (sec. 803), who, except as to himself if re-elected, issues commissions to the persons who appear from this statement to have received the highest number of votes (sec. 805).

From the quoted provisions of Chapter 27, supra, it appears that "any unsuccessful candidate for any public office at any general or special election" may invoke its provisions. Clearly, unless we are to disregard this plain language, an unsuccessful candidate for the office of district judge comes within the purview of its provisions. The office sought is a public office, and the election held was general. We may not, in construing a statute, omit what was inserted therein. (Sec. 10519, Rev. Codes.)

It is argued that a candidate for a state office or for district judge in a district comprising three or more counties might, at the conclusion of the official canvass in one county, be an unsuccessful candidate, and, when the results of others are added to the total already compiled, become a successful candidate, and that as the results from other counties are added to it the same candidate might become unsuccessful, and that in the meantime as the canvass proceeds in various counties the candidate, before it is finally determined officially, may have lost his right in some one or more counties to pursue a proceeding for a recount. Thus it is said that the relator here is entitled to invoke the rule, when testing the validity of a law, that it is not what has been done but what may be done under it. Suffice it to say that, so far as the facts in this case are concerned, relator has not found himself involved in any such predicament as is forecast by the theories of counsel.

True, in many instances this court has recognized the rule for which relator contends as is illustrated by the decision in the case of *State ex rel. Holliday* v. *O'Leary,* 43 Mont. 157, 115 Pac. 204. In the case of *Rider* v. *Cooney,* 94 Mont. 295, 23 Pac. (2d) 261, 265, after recognizing this rule to which we have alluded, we said: "Another rule obtains in this juris-

diction, i. e., that one will not be heard to question the validity of a statute unless his interests have been, or are about to be, prejudicially affected by the operation of the statute. These two rules are discussed and the cases supporting each are collected and harmonized, in the case of *State ex rel. Brooks* v. *Cook*, 84 Mont. 478, 276 Pac. 958, 963. It was said in that case, with reference to the rule sought herein to be invoked, that it 'is applicable to all ·of those cases wherein by strict compliance with the statute the party raising the question of the validity of the statute' would be deprived of a right." Therefore relator is in no position to raise the question, even were it possible—which we do not concede—that any such dilemma as adverted to by counsel might arise.

It is urged that the various sections of the chapter to which ▮ we have referred, relating to the transmittal and canvass of returns by the state board of canvassers which apply to candidates for the office of district judge, have been ignored and no attempt to amend them, and that thereby conflict arises between the provisions. These statutes all relate to the same general subject-matter. In the case of *Register Life Ins. Co.* v. *Kenniston*, 99 Mont. 191, 43 Pac. (2d) 251, 254, we said: "Statutes which are not inconsistent with one another, and which relate to the same subject-matter, are *in pari materia* and should be construed together (2 Lewis & Sutherland on Statutory Construction (2d Ed.) p. 845), and effect given to both if it is possible to do so. (*Wilkinson* v. *La Combe*, 59 Mont. 518, 197 Pac. 836.) * * * We appreciate it is frequently said that statutes *in pari materia* should be read in connection with each other as constituting one law (*Putnam* v. *Putnam*, 86 Mont. 135, 282 Pac. 855), but this is merely another way of stating the proposition that they must be construed together." These statutes may be read together and harmonized as we view it. If the board of county canvassers, in compliance with an order of court, recount the ballots and ascertain a different result, certainly it is the duty of their clerk, under section 801, Revised Codes, to make a certified abstract of such result and transmit it, and the duty of the

state board of canvassers, under section 803, to act accordingly. No good or sufficient reason appears to us why these statutes, as thus harmonized, may not be operative, and they are in nowise inconsistent one with the other.

But it is said that the title of the Act limits its scope to ▆▆ county officers. True, the title does not refer to any unsuccessful candidate for any public office, but this deficiency is insufficient to condemn the Act under the provisions of section 23 of Article V of our Constitution. In the case of *State* v. *Driscoll,* 101 Mont. 348, 54 Pac. (2d) 571, 573, a like contention was made, i. e., that the State Liquor Control Act was silent upon many subjects found within the body of the Act. We there reviewed the many decisions of this court relating to this constitutional provision, in the following language: "In the case of *State ex rel. Normile* v. *Cooney,* 100 Mont. 391, 47 Pac. (2d) 637, 644, it is written: 'The purpose of section 23, Article V, so far as it provides that the subject shall be clearly expressed in the title of an Act, was stated by this court in the case of *State ex rel. Cotter* v. *District Court,* 49 Mont. 146, 140 Pac. 732, 734, as follows: ''The prohibition is aimed at ordinary legislation with the subject of which the members of the legislative body and the public are not supposed to be familiar. Its purpose is: 'First, to prevent hodge-podge or ''log-rolling'' legislation; second, to prevent surprise or fraud upon the Legislature by means of provisions in bills of which the titles gave no intimation, and which might therefore be overlooked and carelessly and unintentionally adopted; and, third, to fairly apprise the people, through such publication of legislative proceedings as is usually made, of the subjects of legislation that are being considered, in order that they may have opportunity of being heard thereon, by petition or otherwise, if they shall so desire.' (Cooley Const. Lim., p. 205.)'' This statement is quoted with approval in the case of *State ex rel. Bonner* v. *Dixon,* 59 Mont. 58, 195 Pac. 841.'

"By this constitutional provision it is intended that the Act shall be germane to the subject expressed in the title. (*Arps*

v. *State Highway Commission,* 90 Mont. 152, 300 Pac. 549, 557; *State* v. *Anaconda Copper Min. Co.,* 23 Mont. 498, 59 Pac. 854, 855.) 'Germane' means in close relationship, appropriate, relevant, pertinent. (*State ex rel. Normile* v. *Cooney,* supra; *Durland* v. *Prickett,* 98 Mont. 399, 39 Pac. (2d) 652, 856; *State ex rel. Nagle* v. *Leader Co.,* 97 Mont. 586, 37 Pac. (2d) 561; *Hale* v. *Belgrade Co.,* 74 Mont. 308, 240 Pac. 371.) It is not necessary that the title shall embody the exact method of application or procedure where the general object is plainly expressed. (*Arps* v. *State Highway Commission,* supra; *Evers* v. *Hudson,* 36 Mont. 135, 92 Pac. 462.) Where the degree of particularity necessary to be expressed in the title of the Act is not indicated by the Constitution itself; as here, the courts should not embarrass legislation by technical interpretations based on mere form or phraseology. (*Arps* v. *State Highway Commission,* supra; *State* v. *Anaconda Copper Min. Co.,* supra; *Evers* v. *Hudson,* supra.) The test is whether the title is of such a character as to mislead the public or members of the legislature as to the subject embraced in the Act. (*Arps* v. *State Highway Commission,* supra; *Evers* v. *Hudson,* supra.) The court has no right to hold the title void because in its opinion a better one might have been used. (*Arps* v. *State Highway Commission,* supra; *State* v. *McKinney,* 29 Mont. 375, 74 Pac. 1095, 1 Ann. Cas. 579.) 'The title is generally sufficient if the body of the Act treats only, directly or indirectly, of the subjects mentioned in the title, and of other subjects germane thereto, or of matters in furtherance of or necessary to accomplish the general subjects of the bill, as mentioned in the title. Details need not be mentioned.' (*Arps* v. *State Highway Commission,* supra; *State* v. *McKinney,* supra; *Barbour* v. *State Board of Education,* 92 Mont. 321, 13 Pac. (2d) 225; *State ex rel. Boone* v. *Tullock,* 72 Mont. 482, 234 Pac. 277.)

"In the case of *State* v. *Anaconda Copper Min. Co.,* supra, it was said: ' "The objections should be grave, and the conflict between the statute and constitution palpable, before the judiciary should disregard a legislative enactment upon the

sole ground that it embraced more than one object, or, if but one object, that it was not sufficiently expressed by the title." (*Montclair* [*Twp.*] v. *Ramsdell*, 107 U. S. 147, 155, 2 Sup. Ct. 391, 27 L. Ed. 431; *Powell* v. *Supervisors of Brunswick County*, 88 Va. 707, 14 S. E. 543.' *Evers* v. *Hudson*, supra.)

"In the case of *Durland* v. *Prickett*, supra, we said: 'The question as to what is germane to a subject is one of fact, rather than law, and there can be no clear line of demarcation between those matters which fall within, and those which fall without, the inhibition of the constitutional provision. (*Hale* v. *Belgrade Co.*, supra.)' "

On the foregoing authority we hold the Act does not violate section 23, Article V, of the Constitution.

Next it is argued that the Act as it stands is violative of the due process of law clause of our Constitution and of the Constitution of the United States (Const. Mont., Art. III, sec. 27; Const. U. S., Amend. 14). The concept of an office at common law, particularly in England, was that it was an incorporeal hereditament and, therefore, one could have an estate in it, but the modern American rule is otherwise. In the case of *State ex rel. Nagle* v. *Sullivan*, 98 Mont. 425, 40 Pac. (2d) 995, 997, 99 A. L. R. 321, we said: "The American concept of a public·office is that of a public trust or agency created for the benefit of the people, and in which the incumbent has not a property right, to be administered under legislative control in the interest of the people." (Citing cases.) An office not being property, a deprivation of relator of his office is not the taking of property.

So far as the proceedings in question were concerned, relator was accorded the right to appear, to be heard, to file pleadings, to make objections, and to participate fully in the hearing— and such is due process of law. (*Mitchell* v. *Banking Corporation*, 94 Mont. 183, 22 Pac. (2d) 155.)

It is further argued that the commencement of this proceeding was not timely, (1) in that, if the five-day period

within which the proceeding must be commenced runs from and after the completion of the canvass by the county board of canvassers, the application was filed too late, and (2) if the period begins to run after the completion of the canvass by the state board of canvassers, it was premature. Clearly, the time commences to run, under the statute, from the conclusion of the canvass by the county board of canvassers; however, the board of canvassers of Silver Bow county was compelled to reconvene by order of this court and correct its findings with reference to the vote for Candidates Riley and Lynch in precinct No. 11 of that county. (*State ex rel. Lynch* v. *Batani,* ante, p. 353, 62 Pac. (2d) 565.) The application was filed within five days after the corrected canvass and therefore was in time.

Relator's next contention is that the respondent court was without jurisdiction to make any order after December 2; in other words, that when it had ordered the board to reconvene and canvass the votes, its jurisdiction ceased. Such is the holding in many jurisdictions under recount statutes, but the provisions of section 3 of Chapter 27 (Rev. Codes, sec. 828.3) foreclose the question by the following language: "  *  *  * but the said court before which said application is presented and filed shall retain jurisdiction thereof for all purposes until said application is finally acted upon, considered and determined, and until a final count is made and had by the said board of county canvassers and the result thereof finally determined as herein provided."

It appears that after the board of canvassers had reconvened and proceeded with the canvass, it made a partial report to the court on December 22, 1936, at which time the canvassers disclosed that they were in doubt as to whether certain ballots were to be counted or not. The court, over objection, advised the board as to the law. It is contended that the court was without jurisdiction so to advise them. The board in making the canvass was acting in a ministerial capacity. (*State ex rel. Lynch* v. *Batani,* supra.) The court was ex-

pressly authorized by section 3, supra, to retain jurisdiction until the votes were recounted. The board was at least in doubt as to how to perform the duty imposed upon it, if not unable to complete the recount. The court, in advising the board, did nothing more than direct their attention to the contents of certain statutory provisions, such as sections 603, 695, 696, 776, 777, and others, of the Revised Codes.

Chapter 27 does not in detail provide as fully as it might as to how all of the proceedings are to be conducted. Section 8882, Revised Codes, provides: "When jurisdiction is, by the Constitution or this code, or any other statute, conferred on a court or judicial officer, all the means necessary to carry into effect are also given; and in the exercise of this jurisdiction, if the course of proceeding be not specifically pointed out by this code or the statute, any suitable process or mode of proceeding may be adopted which may appear most conformable to the spirit of this code." The court was proceeding, in advising the board of canvassers, in accordance with this section and within its jurisdiction.

It is argued that the court was without jurisdiction to receive the final report of the board of canvassers. Since the statute empowered the court to retain jurisdiction until the canvass was completed, the proceeding was not complete until the court was advised that the canvass was completed. Accordingly, we hold that the court did not exceed its jurisdiction.

Lastly, it is contended that the court was acting without its jurisdiction in continuing the contempt proceeding against the one commissioner until the hearing was completed. He was the commissioner who did not appear in obedience to the order of the court at the time he was directed to appear. It was within the power of the court to continue the hearing, and the argument that thereby the board was coerced is without merit.

The application of the relator is denied and the proceeding dismissed.

MR. CHIEF JUSTICE SANDS: I dissent. The majority opinion statement is sufficient; therefore I omit further statement for the sake of brevity.

The law under which this recount was made (Chap. 27, Laws 1935) is unconstitutional in that it contravenes section 26, Article V, of the Montana Constitution, because the recount privilege is limited to an *unsuccessful candidate*. A candidate apparently successful on the face of the returns is barred from this remedy, as is also any elector. It is a special —not a general—law and grants a special privilege to one person at a time. The Constitution in the above section provides: "In all other cases where a general law can be made applicable, no special law shall be enacted." This newly attempted recount law comes squarely within the constitutional inhibition. It is a special law where there is now in the statutes a general law covering the same subject. The old law, amended by the people themselves under the initiative, gives to any elector—which would include all candidates— the right to demand a recount, as distinguished from the new law in question, which limits to an unsuccessful candidate the right to make this demand. No better illustration of the injustice of the new law could be furnished than a consideration of the present situation in this case. One recount at the instance of Judge Lynch has resulted in placing him now as the "successful candidate." Judge Riley, the candidate first declared successful, may now for the first time participate as a party in the controversy. He was required to remain dormant while his rights were being weighed in the Lynch proceeding. The precincts where he might have desired a recount were ignored while the precincts, erroneously counted, according to the claims of his adversary, were re-examined and the returns changed in the interest of his adversary. Now Judge Riley for the first time is permitted to participate, and is demanding in court a recount of other precincts in the county, nearly two months after the election. The contestants for the office did not have an equal show.

Furthermore, no interested elector can at any time demand a fair count or intervene. The demand for the recount is limited to *unsuccessful candidates*. It might easily happen that the unsuccessful candidate would neglect or abandon his right to contest, in which event the candidate actually receiving the fewer votes would be elected to the office without right of the general public or any elector, as in the old law, to demand a recount. Judge Riley is now demanding a recount of other precincts. This situation permits two or more trials of one election case. If the recount in this Riley application should put him in the lead; Judge Lynch would then again become an unsuccessful candidate and he could demand a recount of still other precincts, if not then too late, so that the election may be again delayed. The candidates can only have their rights heard alternately and the public is out of it completely. Surely, such a law in the face of the constitutional provision quoted cannot be sustained.

There are other objections. The new law devolves certain duties upon a "canvassing board." It undoubtedly refers to the county canvassing board and a certificate of election by that body, but that board cannot issue a certificate of election to a district judge. The state canvassing board issues the certificate for this office, though no reference is made in the new law to the state canvassing board. Must Judge Riley await the finding of the state board before he becomes the "unsuccessful candidate" and authorized to demand a recount?

There are several other fatal ambiguities in this new law, but if the majority of this court will not regard the above constitutional question, these patent ambiguities will not be more convincing. In any event, this law of 1935 providing for a recount certainly requires a revamping to make it workable.

In view of the fact that the relator in this proceeding had a remedy of a general character available to him, fair and

equal to all candidates, I insist he could not select this special remedy that gives him the initial advantage.

Rehearing denied January 23, 1937.