MONARCH MINING CO., ET AL., APPELLANTS, v. STATE
HIGHWAY COMMISSION, ET AL., RESPONDENTS.

No. 9377.
Submitted March 12, 1954. Decided May 19, 1954.
270 Pac. (2d) 738.

Mr. William A. Brown, Helena, for appellant.

Mr. Arnold H. Olsen, Atty. Gen., Mr. Donald E. Gottwig, Sp. Asst. Atty. Gen., for respondent.

Mr. Brown and Mr. Gottwig argued orally.

MR. CHIEF JUSTICE ADAIR:

Appeal from a judgment of dismissal.

As an incident to its power to regulate commerce, Congress has jurisdiction over all navigable waters of the United States, Constitution of the United States, Article I, sec. 8. It may therefore control the construction of all bridges over such waters as possible obstructions to navigation.

Prior to 1946 much of the time of Congress was taken up by discussion and action on separate bills every time a bridge over navigable waters was projected. The Seventy-ninth Congress passed and, on August 2, 1946, President Truman signed the Legislative Reorganization Act of 1946, being Public Law 601, which *inter alia,* contains a General Bridge Act, Title V, 60 Stat. 847, U. S. C. A., Title 33, secs. 525-533, wherein Congress gave its consent in advance to the construction of bridges over all navigable waters conditioned on the proposed bridge in each case being approved by the Secretary of the Army and the Chief of Engineers and, in the case of a toll bridge, that such toll bridge also be approved by the proper state department.

In 1953 the Thirty-third Legislative Assembly of the State of Montana passed and, on February 16, 1953, Governor Aronson approved an Act known as the Montana Toll Bridge Authority Act, being Chapter 31 of the Montana Session Laws of 1953. The Act creates an authority to be known as the Montana Toll Bridge Authority which shall be composed of the members of the state highway commission who, under the Act and in addition to the powers and duties theretofore conferred upon them as members of such commission, are empowered to establish and construct a toll bridge or toll bridges upon any of the public highways of this state.

On October 28, 1953, at a regular meeting of the state highway commission it was unanimously voted to erect a proposed toll bridge over the Missouri River, a navigable stream, near the site of the confluence of such river and Armells Creek on the Grassrange-Malta-Harlem road, being a public highway also known as Montana Highway No. 19, such construction having been recommended by Scott P. Hart, the state highway en-

gineer and ex officio secretary-treasurer of the Montana Toll Bridge Authority.

Also on October 28, 1953, the members of the state highway commission, assuming to act as the Montana Toll Bridge Authority, unanimously accepted the above vote and recommendation of the state highway commission with the announced intention of initiating proceedings "for the issuance of bonds in the amount of $450,000 for financing of the State of Montana's share of the costs of constructing such bridge over the Missouri River as a Federal Aid Project."

On December 29, 1953, the plaintiffs, Monarch Mining Company, a corporation, and D. L. Jones, an individual, by complaint filed in the district court of Lewis and Clark County, commenced this action against the defendants, the state highway commission of the State of Montana and ex officio the Montana Toll Bridge Authority,—the individual members of such commission and authority,—the state highway engineer and also the governor, treasurer, secretary of state, auditor and attorney general of the State of Montana.

The plaintiffs aver that the Act, Chapter 31, Laws of 1953, violates various provisions of the Montana Constitution and that they bring their action for and on behalf of themselves and of all others similarly situated to secure a permanent injunction enjoining the defendants from establishing or locating any toll bridge and from collecting any fees or tolls under the purported authority of the Act.

The complaint states: That the plaintiffs reside in Lewis and Clark County, Montana,—that each is a taxpayer in the state,—that each owns and operates gasoline driven vehicles operated over the roads and highways of the state,—that each has been required to and will hereafter be required to pay, as part of the purchase of the gasoline and motor fuels they use, a gasoline tax levied and collected by the State of Montana with the result that the direct burden of such gasoline tax falls upon them,—that they are not able to and cannot pass such tax on to others,—that each is but one of more than 250,000 like owners

and operators of gasoline driven vehicles in the State of Montana,—that each as an ultimate consumer pays out of his own pocket the said gasoline license tax,—that in addition thereto each plaintiff will be required to pay tolls and other charges for operating motor vehicles over and across toll bridges in the State of Montana under the provisions of the Act, Chapter 31 of the Laws of 1953, and in particular the proposed toll bridge to be erected over the Missouri River near the site of the confluence of said river and Armells Creek on Montana Highway No. 19 proposed to be established by recommendation by the Montana state highway commission and action by said commission, ex officio, the Montana Toll Bridge Authority.

A general demurrer interposed by defendants to the complaint herein was overruled whereupon defendants answered admitting most of the averments of the complaint but specifically denying that the Act is violative of any provision of Montana's Constitution or that plaintiffs are without an adequate remedy at law.

The cause was submitted to the district court upon the ultimate facts pleaded in the complaint and admitted in the answer and without the introduction of any other evidence, following which by judgment entered the district court denied the application for an injunction and dismissed the complaint.

This is an appeal from the judgment.

The only interest that plaintiffs showed was that each is a ▇ resident, citizen and taxpayer of the county wherein the defendants have official residence and wherein they perform their statutory functions and that each plaintiff pays a tax on each gallon of gasoline or motor fuel as part of the purchase price thereof. Such interest as the plaintiffs plead is not sufficient to invoke the exercise of the judicial power of determining whether the Act of the legislature, Chapter 31, Laws of 1953, is violative of the Constitution. Chovanak v. Matthews, 120 Mont. 520, 527, 188 Pac. (2d) 582.

The bonds authorized by the Act do not create debts of the ▇ state nor are the funds to pay the principal or interest on

the bonds to be derived from taxes levied or collected on gasoline or other property purchased, owned or possessed by plaintiffs or other residents, citizens or operators of the state.

"A clear distinction between taxes and tolls appears to be recognized. Taxes are levied for the support of government, and their amount is regulated by its necessities. Tolls are the compensation for the use of another's property, or of improvements made by him; their amount is determined by the cost of the property, or of the improvements, and a consideration of the return which such values or expenditures should yield. It has been stated that a tax is a demand of a sovereignty; a toll is a demand of proprietorship. Thus, there is no analogy between the imposition of taxes and the levying of tolls for improvement of highways." 51 Am. Jur., Taxation, sec. 17, p. 49. Compare 11 C. J. S., Bridges, sec. 51, p. 1079; Sjostrum v. State Highway Commission, 124 Mont. 562, 565, 228 Pac. (2d) 238; State v. McKinney, 29 Mont. 375, 388, 74 Pac. 1095; Brackman v. Kruse, 122 Mont. 91, 104, 199 Pac. (2d) 971; People ex rel. Curren v. Schommer, 392 Ill. 17, 63 N. E. (2d) 744, 167 A. L. R. 1347 and note at p. 1356; Sands v. Manistee River Imp. Co., 123 U. S. 288, 8 S. Ct. 113, 31 L. Ed. 149.

The Act, *inter alia,* provides:

"Section 5. (1) The authority is hereby authorized to provide * * * for the issuance of toll bridge revenue bonds for the purpose of paying the cost of any toll bridge. The principal and interest of such bonds shall be payable solely from the special fund herein provided for such payment, and such bonds shall not be a debt, liability or obligation of the State of Montana, and shall be secured only by the revenues from the toll bridge or toll bridges constructed by virtue of this act. * * *

"(2) All bonds issued under this act shall contain a statement on the face thereof that the state shall not be obligated to pay the same or the interest thereon except from the special fund hereinafter provided for. * * *

"(3) * * * The proceeds of such bonds shall be used solely for the payment of the cost of any toll bridge constructed here-

under, and the proceeds of such bonds shall be disbursed in such manner and under such restrictions as the authority may provide.

\* \* \* \* \* \*

"Section 6. All moneys received from any bonds issued pursuant to this act shall be applied solely to the payment of the cost of the toll bridge for the payment of which such bonds were issued, and there shall be and hereby is created and granted a lien upon such moneys until so applied, in favor of the holders of such bonds.

"Section 7. In connection with the issuance and in order to secure the payment of such bonds, the authority shall have power:

" (a) To pledge all or any part of the tolls, income, profit and revenue of any such toll bridge, and to covenant to pay such tolls, income, profit and revenue into the appropriate fund therefor.

\* \* \* \* \* \*

" (c) To create a special fund or funds, in addition to those required by this act, for moneys reserved for principal and interest on bonds and for meeting contingencies in the operation and maintenance of any such toll bridge \* \* \*.

\* \* \* \* \* \*

"Section 8. The authority is hereby empowered to fix the rates of toll and other charges for all toll bridges built under the terms of this act, and from time to time to change such rates of toll and other charges. \* \* \* Whenever the toll bridge revenue bonds issued for the purpose of paying the cost of any toll bridge shall have been retired and the cost of construction of such toll bridge shall thereby have been repaid in full, such bridge thereafter shall be maintained and operated by the state highway commission as a free bridge.

\* \* \* \* \* \*

"Section 12. The state highway engineer shall have full charge of the construction of all toll bridges that may be authorized by the Montana toll bridge authority, and shall have full charge of the operation and maintenance thereof, and, under

the supervision of said authority and subject to its rules and regulations said state highway engineer shall have charge of the collection of all tolls, which tolls shall be deposited to the credit of the respective toll bridge revenue fund designated by the authority.

"Whenever funds are available for the construction of any toll bridge hereunder, the state highway engineer shall proceed with the construction thereof, but all contracts for such construction shall be let by the state highway commission by competitive bidding, after such notice and upon such terms as it shall prescribe by its rules and regulations."

There is neither pleading nor proof that there ever was a bridge over the Missouri River at or near the confluence of the river and Armells Creek. Plaintiffs suffer no prejudice from having a structure that will provide for them a benefit, service and convenience not heretofore enjoyed.

The plaintiffs are free agents. When the facility is provided they shall enjoy the right to voluntarily elect whether or not they care to use the service so made available. If they elect not to use the bridge they pay nothing toward defraying the cost of its construction and maintenance. On the other hand if they voluntarily elect to use the bridge when built then and for such benefit, service and convenience so supplied they shall be required to pay the regular fee, toll or charge exacted of other users which moneys so collected go into the fund or funds from which are to be paid the costs of construction and maintenance and for the retirement of the bonds authorized by the Act.

Plaintiffs not only fail to show that they will be adversely affected by the Act but they affirmatively show that the proposed construction will be of benefit and convenience to all who care to use the service about to be supplied.

It is well settled that only those adversely affected by the operation of a statute will be heard to question its constitutionality. Barth v. Pock, 51 Mont. 418, 438, 155 Pac. 282; State ex rel. Brooks v. Cook, 84 Mont. 478, 490, 276 Pac. 958; Rider v. Cooney, 94 Mont. 295, 313, 23 Pac. (2d) 261; State ex rel.

Riley v. District Court, 103 Mont. 576, 582, 64 Pac. (2d) 115; State ex rel. Griffin v. Greene, 104 Mont. 460, 467, 67 Pac. (2d) 995, 111 A. L. R. 770; Thompson v. Tobacco Root Co-op. State Grazing Dist., 121 Mont. 445, 450, 193 Pac. (2d) 811.

Constitutional questions will not be determined unless their ▮ determination is essential to a disposition of the case. Dickey v. Board of Com'rs of Lewis and Clark County, 121 Mont. 223, 227, 191 Pac. (2d) 315; Montana State Board of Examiners in Photography v. Keller, 120 Mont. 364, 367, 185 Pac. (2d) 503.

While the constitutionality of the Act, Chapter 31, Montana Session Laws of 1953, may be tested by a proper party in a proper case, the record before us does not present such a case. The plaintiffs have wholly failed to show that they were or are in a position to question the constitutionality of the Act either in the district court or in this court, for it is only in a proceeding in behalf of one whose special peculiar rights are affected by the statute that the court's judicial power to determine the constitutionality of such statute is properly invoked. Chovanak v. Matthews, 120 Mont. 520, 527, 188 Pac. (2d) 582.

Since the complaint herein does not present a proper case for the court to determine the constitutional questions which plaintiffs have attempted to raise, the district court was lacking in judicial power to adjudicate same and that portion of the judgment attempting to determine such question is a nullity.

The defendants' general demurrer to the complaint should have been sustained and it is ordered that that portion of the judgment denying the injunction and adjudging that the complaint be dismissed be and it is affirmed.

MR. JUSTICES BOTTOMLY and FREEBOURN, concur.

MR. JUSTICE ANDERSON, (dissenting).

Since none of the parties question the right of plaintiffs to maintain the action here presented and since the questions raised are of public concern, this court should pass on the case upon

its merits rather than burden those interested with the need of seeking out a new plaintiff who may more closely fit our technical niceties.

Resident taxpayers have sufficient interest to question the validity of Chapter 31, Laws of 1953, before the court of Montana.

No useful purpose would be served by an expression from me regarding the merits of the case, and I therefore reserve it.

MR. JUSTICE ANGSTMAN:

I concur in the foregoing dissent of Mr. Justice Anderson.