STATE OF MONTANA EX REL. DONALD E. RONISH, PETITIONER AND RESPONDENT, v. SCHOOL DISTRICT NO. 1 OF FERGUS COUNTY, A BODY CORPORATE AND POLITICAL SUBDIVISION OF THE STATE OF MONTANA AND FRANK SAVAGE, RESPONDENTS AND APPELLANTS.

No. 10116

Submitted January 11, 1960. Decided January 29, 1960.

348 Pac. (2d) 797.

454

See **C. J. S.** Schools and School Districts, § 448.

Charles E. Marshall, County Atty., Peter L. Rapkoch, Deputy County Atty., Lewistown, for respondents and appellants. Peter L. Rapkoch, Deputy County Atty., argued orally.

Donald E. Ronish, Lewistown, pro se, for petitioner and respondent.

MR. JUSTICE CASTLES delivered the Opinion of the Court.

This is an appeal from an order, of the District Court of Fergus County, directing a peremptory writ of mandamus to issue against the appellant school district through its board of trustees, hereinafter referred to as the Board. The writ directed the Board to "forthwith admit Debra D. Ronish to the first grade of Lincoln School."

The facts are not in dispute. Petitioner's daughter, Debra Ronish. was five years old when the school term commenced in September of 1959, having been born November 18, 1953. Prior to the commencement of this term, the petitioner requested that the Board admit Debra to the first grade of the public grade school within their district. This request was denied. On November 18, 1959, Debra's sixth birthday, the petitioner again requested that Debra be allowed to enter the first grade. This request was also denied. During the interval between the first refusal and November 18, Debra had been placed in kindergarten which is tax supported and free to those children residing within the boundaries of School District No. 1.

Following appellant's second refusal, petitioner sought and obtained an alternative writ of mandamus ordering the Board to show cause why it should not admit Debra to the first grade. The Board answered alleging that its refusal was based upon a rule which the school district had adopted to control admissions to the first grade. This rule reads as follows:

"*Age for Enrollment.* The following regulations have been adopted by previous boards for the admittance of kindergarten children:

"1. A child must be five years of age on or before October 31 to be enrolled in the kindergarten, and in case of special request by parents, admittance be extended to November 15, providing that a test be administered to children whose birthdays fall between November 1 and November 15, inclusive, and that

parents be discouraged in asking admittance of children whose birthdays fall between November 1 and November 15.

"The same regulation is to apply to children entering the first grade and who have not had kindergarten training."

This rule had been interpreted to mean that a child who reached the age of six years prior to November 15 would be admitted to elementary school at the commencement of the fall term in September. Debra missed the date by but three days.

The Board also alleged, and it is conceded, that petitioner had not exhausted his administrative remedies by appeal to the county superintendent of schools and the state superintendent of schools. The Board then alleged that since petitioner had not exhausted his administrative remedy that he had a plain, speedy and adequate remedy at law and the extraordinary writ should not lie.

On November 27, 1959, the District Court issued a peremptory writ of mandamus from which this appeal is taken. As before related the District Court commanded the entrance of Debra to be made "forthwith." No return to the writ issued by the District Court was made by the Board, but an appeal was immediately noticed. The Board obeyed the writ in part on November 30 by admitting Debra to the first grade of Lincoln School, but on December 9 filed a notice of appeal, and on December 14 applied to this court for a stay of proceedings which was granted. In the order granting the stay, this court shortened the time for the filing of briefs and set the matter for oral argument on January 11, 1960.

On December 30, 1959, the petitioner, respondent here, filed a motion to dismiss the appeal contending that the question is now moot because the Board complied, in part, with the mandate of the District Court as previously related. We shall discuss the motion to dismiss first.

Petitioner relies on Gill v. Liquor Control Board, 133 Mont. 505, 326 Pac. (2d) 974, and State ex rel. Hagerty v. Rafn, 130 Mont. 554, 304 Pac. (2d) 918, as authority for the motion to

dismiss on the ground of mootness. Both of these cases involved liquor licenses which were issued as a result of District Court writs commanding their issuance. Both opinions were three to two decisions. In the Hagerty case, Justice Adair and Justice Angstman dissented. In the Gill case, Justice Angstman and the writer dissented. In the Hagerty case, no stay of proceedings was had. In addition the Liquor Board had made its return to the District Court showing compliance with the writ. In the Gill case, 133 Mont. at page 511, 326 Pac. (2d) at page 977, a majority of this court said: "Had the Board wished to preserve its right of appeal it could have done so by filing a petition for supersedeas with this court. Having failed to do so they cannot now complain they have lost their right to appeal." By this statement, the court clearly indicated that a failure to stay proceedings by petition to this court made the question a moot one.

We think, however, that the instant case goes beyond the ▮ rules announced in the Gill and Hagerty cases. Here the basis for the writ issued by the District Court was that the trustees had no authority to set rules as will be hereinafter discussed. The ruling was not limited to the single child involved, but was so broad and all inclusive as to limit the trustees from any discretion in the matter of admittance. It is because of this continuing character of the ruling that we granted a stay of proceedings, even though informed that the child in question was admitted. The trustees stated that they had no desire to make this particular child a "pawn" in a legal dispute over their discretionary power. They are to be commended for their concern for the individual child.

These factors cause us to deny the motion to dismiss:

(1) The continuity and all-inclusiveness of the court's order;

(2) The fact that no return was made to the lower court prior to a stay application;

(3) The stay having been granted by this court;

(4) The fact that the lower court's writ was complied with but partially; and

(5) That the matter is of great public interest and concern.

The merits of the matter present this question: Does a school board have power under our Constitution and statutes to set an abritrary date, after the beginning of a school term, after which a child who reaches his sixth birthday may not be admitted for that particular term?

We note at the outset a dearth of authority regarding the power of a school district to set minimum age requirements in the absence of specific statutory authority or under constitutional and statutory provisions similar to ours. Our research has disclosed only one case in which the court held that the school district had that power. In Board of Education v. Bolton, 85 Ill. App. 92, the Illinois court held such power to be proper under a statute which read:

"It shall be the duty of the board of directors of each district: * * *

"Fifth,—To establish and keep in operation * * * a sufficient number of free schools for the accommodation of all children in the district, over the age of six (6) and under twenty-one (21) years, and shall secure for all such children the right and opportunity to an equal education in such free schools." Ill. Rev. Stat., (1896) Chap. 122, Art. V, section 26, par. 5.

That court adopted the so-called "rule of reason" in their interpretation of the statute.

The Supreme Court of Colorado has "assumed without deciding" that a school board has such power. Simonson v. School Dist. No. 14, 127 Colo. 575, 258 Pac. (2d) 1128. The Constitution of Montana has these provisions which we think have a bearing on the subject of our inquiry.

Article XI, section 1, provides: "It shall be the duty of the Legislative Assembly of Montana to establish and maintain a general, uniform and thorough system of public, free, common schools."

Article XI, section 7, provides: "The public free schools of the state shall be open to all children and youth between the ages of six and twenty-one years."

R.C.M. 1947, section 75-2004, is as follows:

"*Who may attend.* Every public school not otherwise provided for by law shall be open to the admission of all children between the age of six and twenty-one years * * *."

The school day, the school month and the school year are provided for in sections 75-2201, 75-2202 and 75-2203. As to the school year, the legislature has simply provided a requirement of six months as a minimum school year.

Section 75-1632 lists the duties of trustees, setting out 24 separate duties, all going to establish an important public trust, with considerable discretion lodged in the trustees. Subdivisions 1 and 10 provide: "Every school board unless otherwise specifically provided by law shall have power and it shall be its duty:

"1. To prescribe and enforce rules not inconsistent with law, or those prescribed by the superintendent of public instruction for their own government of schools under their supervision. * * *

"10. To suspend or expel pupils from school who refuse to obey the rules thereof, and to exclude from school, children under six (6) years of age where the interest of the school requires such exclusion."

It will be seen from the foregoing sketchy quotations of pertinent constitutional and statutory provisions that (1) the Legislature has not attempted to spell out dates of admission, (2) that it has given school boards broad powers with a line of administrative authority through the county superintendent of schools to the state superintendent of public instruction, and (3) that the meaning of the constitutional bracket for admission "six to twenty-one" and the same language in section 75-2004, taken with the constitutional requirement of "a general, uniform and thorough system" will govern dates of admission.

460

We note too that our question is concerned with age alone as the criteria for admission. In the instant case the petitioner contends that by testing, it was determined that his child was mentally advanced, but we will not be concerned with this factor in our discussion. Also, for the purpose of this opinion, when we use the term school alone we will be discussing elementary school.

It is petitioner's contention, and that of the District Court, ▮ that the wording "school * * * shall be open to all children * * * between the age of six and twenty-one years" must be given a literal interpretation, "all" being all inclusive and mandatory.

This same interpretation was arrived at in an attorney general's opinion in 1945 appearing in Volume 21, Opinions of the Attorney General, Opinion No. 72, page 98.

But, we shall examine the wording of the Constitution and statutes to determine what was meant by the framers of the Constitution. In other words, what does the term "all" mean? Should it be taken in its universal and omnibus sense, that is, literally all? Or rather, was it meant to be limited and qualified to conform to good reason to carry out the other purposes of the Constitution such as to have a general, uniform and thorough system of public schools?

We hold the latter to be the proper interpretation. It is im- ▮ mediately seen that the provision does not read "all children at any time upon reaching their sixth birthday." Other provisions of the Constitution only require three months of school. The Legislature has required six months. Obviously the framers of the Constitution could not have meant all children at any time upon reaching their sixth birthday must be admitted. They must also have had in mind a thorough system. It would be very easy to cite examples of absurd results if such a literal interpretation were made. Statutory or constitutional construction should not lead to absurd results if a reasonable construction will avoid it.

It is not enough to state as Article III, section 29 of the 
[4] stitution does that: ''The provisions of this constitution
are mandatory and prohibitory, unless by express words they
are declared to be otherwise.'' The Constitution must receive
a broad and liberal interpretation consistent with the purpose
of the framers and people adopting it. Arps v. State Highway
Commission, 90 Mont. 152, 300 Pac. 549. Also see United States
v. Kirby, 7 Wall, 482, 74 U. S. 482, 19 L. Ed. 278.

We are mainly concerned, as the Legislature and the fram-
ers of the Constitution must have been, with the welfare of the
children of this state. Does a child who was born on March
10, benefit by being put into the first grade for two and one-
half months prior to the end of the school year in May or June.?
The answer, of course, depends upon the particular child, but
it must be kept in mind that the rest of his class, may be ahead
of him in varying degrees in learning and maturity. He must
assimilate the previous six months work in two and one-half
months and in addition keep up the new work which the class
is undertaking. Inability to grasp the fundamentals learned in
the first grade may cause a child to be behind his class in fu-
ture school years, necessitating either extra tutoring or failing
a grade. These observations are made by the court as a mat-
ter of common knowledge.

We feel that neither the framers of the Constitution nor the
 Legislature could have intended that Article XI, section
7, and section 75-2004 compel local school districts to admit
children immediately upon attaining the age of six years at
any time. A reasonable interpretation of these provisions, in
connection with the other provisions requiring a thorough edu-
cation is that a child must be allowed to enter the first grade
sometime during his seventh year after reaching his sixth
birthday. This would be accomplished by admitting children
who become six after a ''cut-off'' date at the commencement
of the next school year. Thus the child whose birthday falls
after a ''cut-off'' date would be admitted the following Sep-

tember in the ordinary course of schooling while he is still six years old.

Statutes which relate to the general subject matter should ■ be construed together where there is no inconsistency between them, and effect given to both where this is possible. State ex rel. Riley v. District Court, 103 Mont. 576, 64 Pac. (2d) 115, and cases cited therein. Taking all of the foregoing provisions together we discern the following to be the legislative intent. Each local school district has the power to admit children into the first grade who are not yet six years of age. This is discretionary and should be decided so that the best interests of the school and child may be subserved to obtain a general, uniform and thorough system of public, free, common schools. Each school district may establish a ''cut-off'' date governing entry into the first grade. This power is granted by section 75-1632. By the establishment of this date, the school districts may refuse admission to a child who becomes six after the ''cut-off'' date, yet during the school year. This child must be admitted to the first grade at the commencement of the following school year while the child is still six years of age.

The rule establishing the ''cut-off'' date must be reasonable ■ and not work an undue hardship on the children to whom it applies. While the rule adopted by the School Board in the instant case is not a model rule for any school district to adopt, in our view, as the Board interpreted it, it is a reasonable rule. It provides an initial ''cut-off'' date of October 31st, beyond which parents are discouraged from entering their children in the first grade. Those children who become six between October 31st and November 15th may be admitted at the parent's request, providing that a test be administered to those children whose birthdays fall between November 1st and November 15th. By this rule, a child may be admitted to the first grade up to two and one-half months after the start of the normal school year. This is a reasonable length of time, in our view, to hold the school open for enrollment of children entering the first

grade. While it is true that this rule embodies only arbitrary dates, we consider this to be a sufficiently reasonable rule under the circumstances.

Although throughout this opinion we have spoken of child ▮ and children we have not lost sight of the fact that this case involves one particular child, that is, Debra Ronish. The Board, believing it to be in her best interest as previously stated, allowed her to enter the first grade soon after the peremptory writ of mandamus was issued by the District Court. It is the paramount concern of this court and the Board, in this and every case, to consider the best interests and welfare of all children. This child, Debra D. Ronish, having been enrolled in and now attending the first grade, it would appear to be to her best interest that she be allowed to continue and not be removed therefrom. We can conceive of no good reason for the Board to expel her now on the basis of this opinion.

We have also not lost sight of the fact, set out previously in this opinion, that the administrative remedies of appeal to the county superintendent of schools and to the state superintendent of schools had not been followed. This matter does not seem to have caused the District Court any concern, and upon oral argument before this court, the petitioner stated that such a proceeding took too long a time and the result would have been obvious. He apparently meant that the superintendent would have backed up the School Board. We have not gone into this phase of the case because under our interpretation such is not necessary.

We have also not mentioned the kindergarten feature of the case as it was presented to us. Whether or not a kindergarten complies with "free public school" does not concern us here. For the foregoing reasons the order of the District Court granting the peremptory writ of mandamus, directed to the School Board and its members, is set aside, each party to pay his own costs.

464

MR. CHIEF JUSTICE HARRISON, THE HONORABLE GEORGE J. ALLEN, District Judge, sitting in place of MR. JUSTICE ANGSTMAN, and THE HONORABLE PHILIP C. DUNCAN, District Judge, sitting in place of MR. JUSTICE BOTTOMLY concur.

MR. JUSTICE ADAIR concurring in result.

In my opinion the trial court's order directing the issuance of the peremptory writ of mandate was improvidently made and for this reason I agree that the order appealed from should be vacated, set aside and held for naught. However, I am unable to concur in all that is said in the foregoing majority opinion.